## MURCH ET AL. *v.* MOTTRAM

No. 72–55.   Decided November 6, 1972

PER CURIAM.

Respondent Mottram sought habeas corpus from the United States District Court in Maine, challenging on various constitutional grounds the validity of a criminal conviction obtained in the Maine state courts. After a full evidentiary hearing, the District Court denied relief, both on the ground that respondent had deliberately by-passed state procedures established for the post-conviction adjudication of such claims, and on the ground that the

constitutional claims were without merit. 330 F. Supp. 51 (1971). The Court of Appeals for the First Circuit reversed, holding that respondent had not waived his right to raise the constitutional issues, and ruling in favor of respondent on one such issue. 458 F. 2d 626 (1972). We have concluded that, under settled principles governing the availability of federal habeas for state prisoners, the finding of the District Court as to waiver must be sustained. We therefore grant the motion of the respondent for leave to proceed *in forma pauperis,* grant the petition for a writ of certiorari, and reverse the judgment of the Court of Appeals.

Mottram was convicted in 1960 of larceny and of being a habitual offender, and these convictions were upheld on appeal. *State* v. *Mottram,* 158 Me. 325, 184 A. 2d 225 (1962). On that appeal, Mottram did not litigate the constitutional issue upon which the Court of Appeals based its decision. Respondent was paroled in 1963, but parole was revoked in 1965. Following that revocation, Mottram brought in state court the action that later became the main focus of concern of the Court of Appeals and the District Court. The original petition in that proceeding challenged directly the validity of the underlying convictions. Prior to the presentation of evidence to the state court judge, however, Mottram's counsel sought to withdraw the original petition without prejudice and to substitute a "Supplemental Petition," which challenged on constitutional grounds only the propriety of the procedures attending the revocation of respondent's parole. At this point the state judge advised respondent's counsel that he considered both the petition and the proceeding to be for post-conviction relief, and that therefore, under the applicable state statutes, Me. Rev. Stat. Ann., Tit. 14, §§ 5502, 5507 (1964), Mottram would either have to raise all grounds for relief from custody or be deemed to waive those that had not

been asserted. Mottram's counsel disagreed with the state judge, contending that the petition was one for common-law habeas corpus, and that therefore the statutory requirement that all grounds for attack be presented did not apply. The judge reiterated his interpretation, and the following colloquy then took place:

"THE COURT: I think I will have to ask you to deal with this at this moment in making a decision as to what you want to do on the basis that I will undoubtedly view it as post-conviction and your only remedy at that point might be an appeal on this point from my decision. I think in all fairness, I should indicate to you this is as I view it. I think that is the result we are led to by the statute, myself.

"MR. TEVANIAN [Mottram's counsel]: I understand your position and I shall discuss it."

(Conference between Mr. Tevanian and Mr. Mottram.) (Off-record discussion.)

(RECESS)

"MR. TEVANIAN: For the record, it is our position here that we do not attack the judgment and conviction of 1960. We are now attacking his personal freedom as a parole violator so that whatever rights we may reserve in appeal as to whether or not this is a post-conviction hearing, we would now like to avail ourselves of that reservation. We have elected to go ahead on that issue.

"THE COURT: I think that makes it clear, Brother Tevanian, for the record . . . ."

Mottram's attack on the parole revocation procedures was unsuccessful before the state judge, and the latter's decision was sustained on appeal by the Supreme Judicial Court of Maine. *Mottram* v. *State,* 232 A. 2d 809 (1967). In 1967, Mottram filed another petition for state

post-conviction relief, in which he sought to attack collaterally the validity of the 1960 convictions upon grounds that included the constitutional ground ultimately sustained by the Court of Appeals. The Supreme Judicial Court of Maine held that the failure to present those claims in the 1965 petition, after an explicit warning by the trial judge, constituted a waiver of those claims under the applicable provisions of the Maine post-conviction statutes, and therefore those statutes precluded Mottram from raising those claims in a subsequent petition for post-conviction relief. *Mottram* v. *State,* 263 A. 2d 715 (1970). Mottram then commenced this litigation in the federal courts.

In *Fay* v. *Noia,* 372 U. S. 391, 439 (1963), this Court said:

> "If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default."

The District Court devoted four days to such a hearing, at which the transcripts of the trials and of the state post-conviction proceedings, as well as the testimony of witnesses called by Mottram, were introduced in evidence. Following this evidentiary hearing, the District Court concluded as follows:

> "From the Court's personal observation of petitioner, it is apparent that he is of at least average

intelligence and well deserves his reputation as a cunning 'jailhouse lawyer.' He was represented at the time by counsel of unquestioned competence and integrity. It is inconceivable that his counsel did not fully explain to petitioner the possible consequences of his action. The Court, therefore, finds that petitioner was fully aware of these consequences and that by deliberately bypassing the orderly procedures provided by the Maine post-conviction statute for raising the issues presented in his most recent state habeas petition and in his present petition in this Court, petitioner has forfeited his right to do so. [Citing cases.]" 330 F. Supp., at 57.

In *Sanders* v. *United States,* 373 U. S. 1, 18 (1963), this Court said, in speaking of habeas corpus for federal prisoners:

"Thus, for example, if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. . . . Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay."

There can be no doubt that States may likewise provide, as Maine has done, that a prisoner seeking post-conviction relief must assert all known constitutional claims in a single proceeding. Indeed, the Court of Appeals agreed that the Maine statutory scheme was an "orderly procedure of the state courts," as that term is used in *Fay* v. *Noia, supra,* at 438. No prisoner has a right either under the Federal Constitution or under 28 U. S. C. § 2241 to insist upon piecemeal collateral attack on a

presumptively valid criminal conviction in the face of such a statutory provision.

The Court of Appeals conceded that "[t]here are a great many instances where a party must be bound by a mistake of his counsel." 458 F. 2d, at 629. But it concluded that because the statutory question presented to the state trial judge, whether the Maine post-conviction statute required respondent to assert in the 1965 proceeding all of his attacks upon his detention, was not open and shut, counsel's failure to assert the constitutional claim in the state proceeding could not be regarded as a "deliberate by-pass" under *Fay* v. *Noia, supra,* at 438–439. That court also relied on the fact that there was no "extrinsic evidence" that Mottram "was seeking to circumvent state procedures . . . ." 458 F. 2d, at 629.

Concededly, Mottram testified at the hearing in the District Court that he did not intend to waive his constitutional attacks on the underlying 1960 convictions. But if a subjective determination not to waive or to abandon a claim were sufficient to preclude a finding of a deliberate bypass of orderly state procedures, constitutionally valid procedural requirements, such as those contained in the Maine statute requiring the joining of all bases for attack in one proceeding, would be utterly meaningless. Nothing in our previous holdings in this area supports the conclusion that Mottram, having fair warning of the effect of the Maine statute, could cavalierly disregard that intended effect by simply announcing that he did not choose to be bound by it. In this sensitive and ofttimes strained area of federal-state relations, a state prisoner may not deliberately "elect" not to comply with the interpretation of the state procedural statute by the state court, and then assert in federal court that no rights were waived because he did not have the subjective intent to waive his constitutional claims. The Court of Appeals apparently felt that so

long as the highest state court has not construed the relevant procedural statute, a prisoner is free to adhere to his own interpretation and to establish thereby that he did not deliberately ignore state procedure. But here, respondent had reasonable warning from the trial judge of the risk that he ran in declining to assert his claim in the first proceeding, and nonetheless chose to run that risk. Such conduct fully supported the District Court's conclusion that he had deliberately chosen to bypass orderly state procedures, and the Court of Appeals erred in upsetting that determination.

*Reversed.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL concur, dissenting.

I dissent and would affirm because in my view the Court of Appeals reached the correct result on the facts presented.