**Andy NOLAN, Petitioner,**

v.

**Harold R. SWENSON, Warden, U. S. Penitentiary, Jefferson City, Missouri, Respondent.**

No. 72 C 778(2).

United States District Court,
E. D. Missouri, E. D.

May 14, 1973.

Andy Nolan, pro se.

John C. Danforth, Atty. Gen., Richard S. Paden, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

Andy Nolan, a black man with only a second grade education, was convicted on August 13, 1963, in the Circuit Court of Dunklin County, Missouri, on his pleas of guilty to separate charges of first degree murder and assault with intent to commit murder. He was sentenced to life imprisonment on the murder charge and to a concurrent term of ten years imprisonment on the assault charge. He now petitions for habeas corpus after unsuccessful attempts to obtain post-conviction relief under Missouri Supreme Court Rule 27.26, V.A.M.R.

Five grounds for relief are asserted in the petition, one of which (that the sentence for assault with intent to kill exceeded the statutory maximum) has been expressly withdrawn by petitioner as in error. Of the remaining four grounds, one attacks the voluntariness of the pleas and two inter-related ones involve the failure of the trial court to hold a hearing on petitioner's mental competency. The final ground pertains to the failure of the Missouri courts to accord petitioner an evidentiary hearing on a second motion for post-conviction relief.

The first of petitioner's Rule 27.26 motions was filed several years after his

sentence, when he concluded (after talking to other inmates at the state penitentiary) that his life sentence was too severe. After a full and fair evidentiary hearing at which petitioner was represented by court-appointed counsel, the first motion was overruled by an order of the trial court which was affirmed on appeal in Nolan v. State of Missouri, 446 S.W.2d 754.

Basically, the thrust of the first motion was that petitioner's initial plea of guilty (to the murder charge) was not a free and voluntary act since he did not understand the nature and consequences of the pleas of guilty. A copy of the state court transcript of the evidentiary hearing on the motion (which includes transcripts of petitioner's arraignment and of the proceedings at the time of the pleas and sentencing) was filed in this Court in response to our order to show cause. These transcripts fully support the findings of the state courts in ruling adversely to petitioner.

At the time of petitioner's arraignment (summarized in the opinion of the Missouri Supreme Court in 446 S.W.2d 757) and before appointing different counsel to represent him on each charge, Judge Goodman meticulously advised petitioner of the nature and elements of the offenses with which he was charged and of the range of permissible punishment for each, cautioning him that "if there is any part of it that you don't understand, now I want you to be certain to let me know, because the first thing we want to do is for you to be sure that you understand what the situation is." He was also told of his right to a jury trial and to the appointment of counsel "to advise with you and to talk to you and to represent you before you take any action in this case," that ample time would be afforded him to prepare for trial, and that at the trial the burden would be on the state to prove him guilty beyond a reasonable doubt and if it failed to do so, he would be "turned loose." Petitioner was specifically informed by the judge that "a charge of first degree murder in Missouri is pun-

ishable by life imprisonment, that is imprisonment for the remainder of your natural life, or by a death sentence, which would be putting you to death in what is commonly called the gas chamber, at Jefferson City." With respect to the assault charge the petitioner was told that the penalty could be from two years to life imprisonment.

After a careful study of the transcript of the state court hearing, we agree with the conclusion of the Missouri Supreme Court that "while [petitioner] may be unlettered he is not feeble-minded or even stupid nor so dumb as his answers on direct examination sought to convey."

Petitioner testified that although he knew that he was getting "life plus ten," he did not know what "that life is" (that is, "natural life") or what that language meant. After first testifying that his court-appointed counsel, Senator John Noble, told him that "life" meant ten-six, that is, ten years and six months, he finally conceded that Senator Noble had made no promises or guarantees to him but had simply told him that life termers might (and then again might not) be paroled after serving ten or twelve years. Quoting from his testimony on cross-examination at the state hearing:

"Q. Well, doesn't it come down to this Andy, you just think you got too much time, you knew what you were getting when you got it, but now you think it's too much.

A. Fact of business, I know I can't do no natural life sentence.

Q. Well, isn't that what it is, you knew you were getting life for first degree murder when you pleaded guilty, you knew that, didn't you?

A. I knowed I was getting life, but I didn't know it meant to stay there the rest of your life.

*    *    *    *    *    *

Q. Don't you know that life means just what it says, it means life?

Now, this ten and six or some years like that, are you talking about the possibility of being paroled after that length of time?

\* \* \* \* \* \*

A. At the end of ten years?

Q. Yes.

A. Yeah.

Q. You knew it was only a possibility, nobody could guarantee you that you would be paroled?

A. He was telling me—he was telling me this, 'You go up and stay ten years and keep your nose clean, and at the end of ten years there's a possibility you can make parole.'

Q. He said, 'There's a possibility', he didn't guarantee anything?

A. Oh, he wouldn't guarantee nothing.

\* \* \* \* \* \*

Q. So, now we come down to that what he told you, 'You go up there and you behave yourself ten years and there's a possibility you may get a parole.'

A. Yeah.

Q. So, that's what it was?

A. Yes."

Senator Noble testified that he had made no statement as to ten years but what he told petitioner was that if he entered a plea of guilty to a life sentence and made a good prisoner there was a possibility he would be paroled in from thirteen to fifteen years. He further testified that "We (Noble and petitioner) went—of course, we went into a discussion of the facts, and I was concerned with the fact that in the event of trial there was a possibility of the death sentence. However, in regard to the entry of the plea or his decision to make the plea, I mean I left that entirely to him, and it was a decision for him to make. He was the defendant, and I did not try to influence him in connection with making the entry of the plea of guilty. \* \* \* But when the final de-

cision was made by him to enter a plea of guilty, I was satisfied that he understood what was being done." Senator Noble simply told petitioner "what the possibilities were both ways."

We agree with the finding of the state courts that the guilty pleas were voluntarily and knowingly made and that petitioner understood the nature of the charges and the consequences of the pleas.

■ After losing his appeal on his first motion, petitioner then filed a second Rule 27.26 motion on April 15, 1971, including therein as additional grounds for vacating the sentences (1) the failure of the sentencing court to have conducted a hearing on petitioner's mental competency and (2) the alleged "equivocal" nature of the pleas of guilty, primarily because the court had granted his attorney's motion for a mental examination. This second motion was dismissed without a hearing under Missouri Supreme Court Rule 27.26(d), which prohibits the sentencing court from entertaining a second motion when the ground is new but could have been raised in the prior motion, the burden being on defendant to demonstrate that any new ground in the second motion could not have been raised in the first motion. The order of dismissal was affirmed by the Missouri Supreme Court in Nolan v. State of Missouri, Mo., 484 S.W.2d 273.

As the result of the refusal of the Missouri Supreme Court to entertain his second Rule 27.26 motion, petitioner asserts in this Court that such refusal is violative of his constitutional right to attack the sentence in the state court. In Murch v. Mottram, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194, the United States Supreme Court held "There can be no doubt that States may \* \* \* provide \* \* \* that a prisoner seeking post-conviction relief must assert all known constitutional claims in a single proceeding \* \* \*. No prisoner has a right either under the Federal Constitution or under 28 U.S.C. § 2241 to insist upon piecemeal collateral attack on a

presumptively valid conviction in the face of such a statutory provision."

The Missouri Supreme Court held that no valid ground was shown for petitioner's failure to present the new grounds in conjunction with his original motion. Whether right or wrong (and we think right) no constitutional question is presented by the mere failure of the Missouri courts to consider the second petition. The only question actually for determination is whether or not such additional grounds are now available to petitioner for seeking federal habeas corpus relief. The resolution of this question depends on whether petitioner's failure to assert in his first (1968) proceeding the additional (1971) grounds of attack upon his detention constitutes a "deliberate by-pass" under Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. For the purpose of resolving this question we have nothing before us but the transcripts and the briefs of petitioner's counsel in the state court proceedings. We do note that not only does the form utilized by petitioner (with the aid of his jail-house lawyer) in moving for Rule 27.26 relief explicitly require a movant to set forth *all* grounds known to him, but that the affidavit to the motion expressly states that "I know the contents (of the motion and) *it includes every ground known to me* for vacating the conviction and sentence attacked in this motion." And at the hearing on the first motion the following appears on direct examination by petitioner's court-appointed counsel:

"Q. Now, *is there any other complaint that you've got,* or any other reason that you feel like the Judge ought to set aside have a trial?

A. Well, one reason.

Q. What is it?

A. To try to reduce this life, that's what I want a new trial for.

THE COURT: Try to what?

THE WITNESS: Reduce my sentence.

THE COURT: From life?

THE WITNESS: Yes, sir."

Again, on cross examination:

"Q. Suppose you tell us in your own words what you're complaining about, why you want another trial?

A. Why I want a new trial is try to get this life set aside, or either reduced, that's my reason."

There is much more testimony by petitioner to the same effect during his cross-examination, but we quote only the following additional excerpt therefrom:

"Q. * * *. But what I'm getting at, the *only* thing you're complaining about is you thought that life meant ten years and six months?

A. That's what I thought it was.

Q. And is that *all* you're complaining about?

A. That's my complaint right there."

In view of our finding, infra, that the additional grounds are lacking in merit, we deem it unnecessary to definitively determine whether petitioner's failure to assert these additional grounds in his first petition precludes him from seeking habeas corpus relief based on such grounds.

That petitioner as well as his attorney knew that he had been afforded a mental examination, that the report finding him competent was not contested, and that no court hearing would be held on the issue of mental competency is not in dispute. However, in view of the finding of competency as a result of his examination and the absence of any evidence to the contrary, neither the petitioner nor his attorney then considered that the failure to conduct a hearing thereon could have prejudiced petitioner.

It is apparent that Senator Noble was constrained to file the application for a mental examination out of an abundance of caution because of the seriousness of the charge, which involved the possibility of a death sentence. It is equally apparent that the court sustained the mo-

tion and ordered the mental examination for the same reason.

Petitioner makes no contention that he was in fact mentally incompetent either to stand trial or otherwise, nor does he allege any facts which would support any such allegation. We hold that petitioner was not deprived of any constitutional right by reason of the failure to hold a hearing after the report of the *mental examination which was in no* wise contested demonstrated his competency. Nor does he make any allegation of any fact on the basis of which his counsel should have contested the finding of competency and insisted on a hearing. Instead, he insists that the act of the trial court in ordering the mental examination on motion of his counsel *of itself* creates a "bona fide" doubt as to his competency to stand trial, thereby mandating a hearing on that issue. We do not agree. Under the circumstances, a competency hearing for petitioner would have been an exercise in futility and no more than an empty gesture.

Jones v. Swenson, 8 Cir., 469 F.2d 535 is directly in point. The Court there held that a hearing on the issue of competence is not constitutionally required unless there is some *evidence* or showing that the defendant may be mentally incompetent to stand trial. The Court stated,

"In order to obtain relief by means of federal habeas corpus, it is incumbent upon a state prisoner to demonstrate the deprivation of some constitutionally protected right during a state's criminal proceedings. Pate v. Robinson, supra, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, held that where there was uncontradicted evidence of pronounced irrational behavior on the part of a state defendant and where that evidence 'raises a "bona fide doubt" as to a defendant's competence to stand trial,' the defendant must receive an adequate hearing on the issue of competence. This is the constitutional standard by which the proceedings in the present case must be measured."

We believe it obvious, by reference to the calendar, that the second Rule 27.26 motion resulted from the diligence of a jail-house lawyer who became aware of the subsequent dictum in Brizendine v. Swenson, D.C.W.D.Mo., 302 F.Supp. 1011, 1019, (decided in August, 1969, while the adverse ruling on the first motion was on appeal) to the effect that "(i)f the trial court grants a motion [for a psychiatric examination] * * * it is obvious that a *bona fide* doubt [as to a defendant's competency to stand trial] is immediately established as a matter of fact and as a matter of law in that particular case; otherwise the trial judge would not have granted the motion." *Brizendine* was correct on its facts. *Jones,* supra, has rejected the dictum relied on by petitioner.

The pleas of guilty were in no wise "equivocal," but were made voluntarily with full knowledge of all relevant facts and possible defenses. No further hearing is required. On the record, petitioner is not entitled to the writ. Accordingly, it is hereby ordered that the petition for a writ of habeas corpus should be and it is hereby denied.