**Larry Eugene WALL, Appellant,**

v.

**SUPERINTENDENT, VIRGINIA STATE PENITENTIARY, Appellee.**

No. 76–1872.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1977.

Decided April 21, 1977.

Charles S. McCandlish, Richmond, Va. (Hunton & Williams, Richmond, Va., on brief), for appellant.

Alan Katz, Asst. Atty. Gen., Richmond, Va. (Andrew P. Miller, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Denied habeas corpus in the District Court, Larry Wall now renews the contention that his imprisonment, pursuant to conviction in the State court of three burglaries in Danville, Virginia during November

1971 and May 1974, resulted from abrogations of due process of law, in that he was denied his rights to trial by an impartial jury as well as to confrontation of witnesses against him, both assured by the Sixth and Fourteenth Amendments. We grant the writ.

The partiality imputed to the jury arises from acceptance and service as jurymen of five veniremen who on May 15, 1975, 12 days previous to Wall's trial, sat on the jury which found one Pugh guilty of burglary despite appellant Wall's testimony in support of Pugh's alibi defense. Wall had given evidence that he had been with Pugh continuously at several bars from four o'clock in the afternoon of the day of Pugh's indictment crime until he took Pugh home at two or three in the morning following, the interval during which the crime had been committed. The District Judge interpreted the verdict against Pugh as meaning that the five Pugh-Wall jurors had disbelieved Wall's testimony. While at both trials the accusations were similar, and were advanced by the same prosecution witnesses, they implicated separate and unrelated incidents—the closest nexus was the involvement of several common accomplices and the relatively brief interval (about five or six days) between Pugh's offense and the May 1974 offense charged to Wall.

Without a single response in the affirmative and without reservation whatsoever by any of them, the five panelists were quizzed collectively on voir dire upon whether what they had seen or heard at the Pugh trial or the fact that Wall apparently had there been disbelieved by them would prevent their according Wall a fair and unbiased trial anew. Over Wall's objection, these five veniremen on May 27, 1975 were held to stand indifferent and were seated in the jury by the same judge who had presided at the Pugh trial.

A verdict of guilty was returned against Wall, followed by judgment thereon and a sentence of penitentiary imprisonment. On appeal the Supreme Court of Virginia affirmed, thus finding no fault in the jury selection. By petition for habeas in the Federal District Court, Wall attacked the conviction because of the composition of the jury. The writ refused, this appeal was taken. We think it well taken.

■ Complaint of denial of an impartial jury was asserted at trial and on appeal in the State courts. This, too, was the main thrust of Wall's application in the District Court for habeas and, as initially noted, it is again pressed here. Its burden embraced a broad thesis and necessarily contemplated consideration of all information gained at the Pugh trial by the five common jurors which continued within their knowledge when they sat in Wall's trial. Each item of this previous knowledge was of the warp and woof of the appellant's grievance. Consequently, these several invasions upon his rights were passed upon by each of those courts before us, leaving no doubt of exhaustion of State remedies.

■ Our paramount concern is not the voir dire, but rather the flagrant *per se* incursions upon Wall's rights to trial by an impartial jury and to witness-confrontation, occasioned when jurors at the Pugh trial, who there had become apprised of or exposed to sworn information prejudicial to Wall that could not have been introduced at his own trial, were permitted to serve on the Wall jury. Expositive enumeration of the subjects of these Wall jurors' foreknowledge is convincing that impartiality of the jury was thereby destroyed:

1. Pugh (thereafter convicted by the five), Wall, and the others were portrayed as "very close friends" who "spent a lot of time together and knew each other's movements"; Wall was branded as a part of Pugh's "crew".
2. Others of the group that included Wall and Pugh had been characterized as felons.
3. At least two of the witnesses against Pugh—his admitted confederates in crime—also appeared against Wall; indeed, the evidence presented by them had activated the charge against Wall.
4. The prosecutor, both during Wall's cross-examination and in summation,

implied that Wall had expressed the wish that one of those two witnesses die.

5. The perpetration of the Pugh offense was confided to Wall on the night of its commission.

6. Wall, in testifying for Pugh, admitted that he had been convicted of a felony (wherein consider, particularly, that by declining to testify he had precluded any rightful introduction of this attack at his own trial).

This list comprises proof in fact used against Wall yet not otherwise available to the State or, indeed, receivable into evidence, proof so damaging that exclusion of it from the minds of the five common jurors must be held beyond possibility. No one in their circumstances—no matter how competent and deeply dedicated to their voir dire oaths—could have, while resolving the guilt or innocence of Wall, erased all thought of what they had heard concerning Wall at Pugh's trial. Especially difficult would be the suppression of it during consultation on the verdict with the others of the twelve.

Wall's inability to confront the witnesses to this evidence is also baldly and amply revealed by these facts. Again he was robbed of a constitutional right and again there is ground for granting the writ.

Upon such staunch facts, we find no precedent whatsoever to withstand the appellant's condemnation of his triers. The offenses to impartiality avouched here are at least as serious as those that in other cases have required dismissal for taint of jurors. *See Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964) (attendance at previous trial of defendant); *United States v. Tweed*, 503 F.2d 1127, 1128–29 (7 Cir. 1974) (service at previous trial of the defendant, notwithstanding acquittal there); *Mottram v. Murch*, 458 F.2d 626 (1 Cir.), rev'd on other grounds, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972) (service at both of defendant's severed trials); *Everitt v. United States*, 281 F.2d 429 (5 Cir. 1960) (service at severed trial of codefendant); *Lett v. United States*, 15 F.2d 690 (8 Cir. 1926) (*accord*).

We have examined decisions cited by appellee wherein a juror's service at the trial of another accused by identical prosecution witnesses of a similar but unrelated offense was held insufficient to require that bias be inferred. *E.g., United States v. DeMet*, 486 F.2d 816 (7 Cir. 1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); *Belvin v. United States*, 12 F.2d 548 (4 Cir. 1926). But they are unpersuasive here, for they tolerated usages far less prejudicial to or accusative of the defendant. Surely, the actualities of the present case overturn the presumption of juror impartiality posited in *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

Appellant Wall's petition for habeas must be honored, so clear is the infringement of his constitutional rights. He will be released on the writ unless within 30 days the Commonwealth of Virginia arraigns him again.

Reversed and remanded with directions to issue writ and release appellant unless State grants new trial.