**Joseph Howard DONOVAN, Appellant,**

v.

**Jack F. DAVIS, Director, Virginia State Department of Corrections, and A. T. Robinson, Superintendent, Powhatan Correctional Center, Appellees.**

No. 76–2251.

United States Court of Appeals, Fourth Circuit.

Argued March 16, 1977.

Decided June 24, 1977.

Edward L. Hogshire, Washington, D. C. (Paxson, Smith, Boyd, Gilliam & Gouldman, John C. Lowe, Lowe & Gordon, Charlottesville, Va., on brief), for appellant.

K. Marshall Cook, Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Chief Deputy Atty. Gen., and Wilburn C. Dibling, Jr., Asst. Atty. Gen., Richmond, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WINTER, Circuit Judge.

WINTER, Circuit Judge:

Joseph H. Donovan appeals from an order of the district court denying him a writ of

habeas corpus to set aside his conviction on a charge of attempted rape. Because we conclude that Donovan was denied his right to trial by an impartial jury, we reverse and direct that the writ be issued unless the state affords him a new trial.

## I.

On March 6, 1972, Donovan was tried before a jury in the Circuit Court of Rockingham County, Virginia on a charge of unauthorized use of a motor vehicle alleged to have occurred on or about November 14, 1971. The jury returned a verdict of not guilty after full trial. One week later, Donovan was again brought to trial in the same court on a charge of attempted rape of his first cousin which was alleged to have taken place on October 27, 1971.

Immediately prior to the second trial, defense counsel moved to quash the jury venire. The motion was based upon the fact that "several" panel members had previously served on the jury which acquitted Donovan of the automobile charge. The circuit court denied this motion, although it stated that it would safeguard Donovan's rights by admonishing the jury that their participation in another case should not prejudice them against the accused.

When the names of prospective jurors were called, the trial judge informed them that Donovan had recently been tried for another offense, and that some of their number had served as jurors in that case. The panel was then asked whether any individual member was influenced by exposure to the earlier trial. None of the panel members responded, and the venire was turned over to defense counsel for further challenges. Defense counsel repeated his challenge to jurors who had sat in the previous case, but he was again overruled.

Of the twelve jurors selected, seven had served in the automobile case. Before the jury retired to consider its verdict in the second case, the members were admonished to wipe from their recollections any impressions that they might have gotten from the first trial which were unfavorable to Donovan and to decide his case on the evidence

adduced on the charge of attempted rape. The jury returned a verdict of guilty and Donovan was sentenced to a prison term of ten years.

Following his conviction, Donovan sought a writ of error from the Supreme Court of Virginia, but the writ was denied. Later, he filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Virginia. The petition repeated Donovan's objection to the composition of the jury which convicted him. The district court denied relief without a hearing and Donovan appeals.

## II.

■ Donovan had a federal constitutional right to an impartial jury:

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process.

*Groppi v. Wisconsin*, 400 U.S. 505, 509, 91 S.Ct. 490, 492, 27 L.Ed.2d 571 (1971); *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

■ Our analysis of the issues and the evidence presented at the two trials leads us to conclude that that right was violated when seven persons who served as jurors at the first trial also served as jurors at the second.

The first trial was on the charge of unauthorized use of a motor vehicle. The vehicle, a Dodge truck, belonged to the employer of Donovan's father who operated a garage and a used car lot. After the car lot owner testified that he had not authorized Donovan to use the truck and had permitted him to use another car on only one occasion, there was testimony from a police officer to the effect that the defendant had been observed driving vehicles on and off the lot on a number of occasions. Donovan testified in his own defense. He stated that he had used cars on the lot on a number of occasions and that he had used the Dodge truck "to take the girls home." On other

occasions, he had used other vehicles to take his girlfriend riding and to "chase" the wife of his father's employer on New Year's Eve. The employer conceded that he, Donovan and another male had taken a trip with three females whose last names the employer could not remember and a female witness testified that she was a member of the party.

The second trial was, of course, on the charge of attempted rape. From the evidence, the sole issue for the jury was a determination of credibility between Donovan and the prosecutrix. The prosecutrix testified that Donovan came to her home after her mother had left for work, that he had pursued her to her bedroom, and that he attacked her while she was dressing in preparation for going to school. Donovan disputed this version of the facts, testifying that the prosecutrix enticed him to her bedroom and consented to his sexual advances. Since there was no witness to the event, the testimony of both was uncorroborated.

On these facts, we think it more likely than not that, consciously or unconsciously, the jurors, in making the credibility determination which was the essential issue in the second trial, were influenced by the evidence that they had heard at the first. The jurors who heard the evidence in the first trial could well have concluded that Donovan had an active interest in pursuing females. Certainly, it would have been far easier for members of the jury to believe the prosecutrix and to disbelieve the defendant if they had the impression that Donovan was a putative Don Juan. We think that the jury could well have concluded that, from the evidence that was presented at the first trial, this was Donovan's inclination, and therefore we conclude that there was a substantial likelihood that the seven jurors who sat in both trials were not indifferent in appraising the evidence at the second.

We disagree with the Commonwealth's argument that the *voir dire* and the instruction given to the jury before it retired to consider its verdict cured any prejudice arising from the joint service of the seven jurors. The *voir dire* was conducted before any evidence was presented at the second trial and the members of that venire were not told what issues the case would present. The members could quite honestly remain silent in response to a question about whether they would be influenced in arriving at a verdict at the second trial by what they had previously heard—thereby indicating that they would not be affected—and yet be influenced when the attempted rape case was submitted to them.

We do not doubt that the trial judge, by his limiting instruction, made a genuine effort to remove any prejudice. But we are not persuaded that prejudice of this type is so easily erasable, and it is reasonable to conclude that a secondary effect of the limiting instruction would be to arouse the curiosity of the jurors in the second case who did not serve in the first and increase the likelihood that they would ask questions of the jurors who served in both about the first trial. We therefore doubt that the *voir dire* or the instruction sufficed to cure any prejudice. *Cf. United States v. Tweed*, 503 F.2d 1127 (7 Cir. 1974) (jury venire informed that defendant had been "involved" with another trial, but no reference to type of trial or actual role of the defendant; no prejudice found).

### III.

Our conclusion that there was substantial likelihood that Donovan was denied an impartial jury and that therefore his conviction must be set aside is supported by the apposite precedents. Federal courts have consistently rejected criminal convictions when there is a substantial likelihood of jury bias or prejudice.* At least three deci-

---

* For example, a number of courts have held that when two or more persons are charged with the same or related offenses arising from the same transaction and are tried separately, a juror who has convicted in one case is not competent to sit in another. *United States v. Haynes*, 398 F.2d 980 (2 Cir. 1968); *Casias v. United States*, 315 F.2d 614 (10 Cir. 1963);

sions have addressed situations somewhat analogous to the facts before us. In *Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964), the Supreme Court rejected a federal conviction based upon the transportation of a forged instrument in interstate commerce. The court noted that the defendant was tried twice in succession, first on a charge of forging and uttering government checks, and then on a charge of transporting a forged instrument. The first trial resulted in a conviction which was announced in the presence of a jury venire being assembled for the second trial. Defense counsel immediately moved to quash the venire but was overruled. Defendant was then tried on the second charge and convicted. On appeal, the Solicitor General confessed error.

> "Prospective jurors who have sat in the courtroom and hear a verdict returned against a man charged with crime in a similar case immediately prior to the trial of another indictment against him should be automatically disqualified from serving at the second trial, if the objection is raised at the outset."

*Id.* at 545, 84 S.Ct. at 1696. The Court responded by noting its agreement "that under the circumstances of this case the trial court erred in denying petitioner's objection." *Id.*

In *Mottram v. Murch*, 458 F.2d 626 (1 Cir.), *rev'd on other grounds*, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), the First Circuit set aside a state conviction and directed that a writ of habeas corpus issue unless a new trial was awarded. Defendant was tried twice by the courts of Maine, once on a charge of car theft, and then on a charge of being a habitual offender. Four jurors from the first trial participated in the second trial as well. During the first trial, defendant took the stand, was confronted with evidence of several prior convictions, and invoked his Fifth Amendment privilege. During the second trial, defendant refrained from testifying. However, the four common jurors were able to call

upon their recollection of the defendant as an uncooperative witness with a history of criminal conduct. The court concluded that "[p]ermitting four jurors to sit on both trials created such a likelihood of prejudice to the petitioner as to deny him due process." 458 F.2d at 630.

Finally, in *Wall v. Superintendent, Virginia State Penitentiary*, 553 F.2d 359 (4 Cir. 1977), we granted habeas relief upon a showing that defendant Wall was convicted of three burglaries by a Virginia jury, of which five members had previously served in another trial, during which Wall had appeared as an alibi witness for another defendant, an individual named Pugh. The first jury refused to believe the alibi and convicted Pugh. Evidence adduced at the first trial suggested that Pugh and Wall were close friends, that both associated with felons, that Wall had indicated a desire to kill a prosecution witness, and that Wall himself had been convicted of a felony offense. We said that "[u]pon such staunch facts, we find no precedent whatsoever to withstand appellant's [*i. e.*, Wall's] condemnation of his triers." At 361. Indeed, we characterized the facts as indicative of "flagrant *per se* incursions upon Wall's rights to trial by an impartial jury and to witness confrontation, . . . ." At 360.

Although none of these cases is directly on point, each offers support for the conclusion that we reach. In short, proceeding under the premise that a defendant is entitled to an unbiased jury, we think that the facts indicate a violation of Donovan's due process rights. By allowing seven jurors to sit on both of Donovan's trials, the second jury was exposed to evidence outside of the record which created a substantial likelihood that they would be predisposed to disbelieve Donovan, thereby undermining his defense. The district court's judgment denying habeas corpus relief must be reversed with directions to issue the writ unless the state affords him a new trial within a reasonable time.

*REVERSED AND REMANDED.*

*Everitt v. United States*, 281 F.2d 429 (5 Cir. 1960); *Lett v. United States*, 15 F.2d 690 (8 Cir.

1926). *See also United States v. Stevens*, 444 F.2d 630 (6 Cir. 1971).