Kami Lee ANTHONY, Petitioner,

v.

Patricia Phelps SCHUPPEL, Warden,
et al., Defendants.

No. CIV.AMD 99–2346.

United States District Court,
D. Maryland.

Jan. 20, 2000.

Court, the public, or the mirror. *See* LRCi 83.2(b)(4)(B) ("An act or omission by an attorney admitted to practice before this court, individually or in concert with any other person or persons, which violates the applicable Rules of Professional Conduct ... shall constitute misconduct and be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship."); *see also Somers v. Statewide Grievance Comm.*, 245 Conn. 277, 715 A.2d 712, 718–20 (1998) (concluding that duty of fairness to opposing party and counsel applies even when attorney appears *pro se*, for "an attorney who acts in contravention of the rule cannot justify that conduct on the basis that it was intended to benefit himself or herself rather than a client"); *Runsvold v. Idaho State Bar*, 129 Idaho 419, 925 P.2d 1118, 1119–20 (1996) (acknowledging that "a pro se lawyer/litigant does represent a client," namely, "himself/herself").

Grason John–Allen Eckel, Cambridge, MD, for Petitioner.

Anne N. Bosse, Asst. Atty. General, Criminal Appeals Division, Baltimore, MD, for Defendants.

## MEMORANDUM

DAVIS, District Judge.

Petitioner Kami Lee Anthony, a Maryland inmate, instituted this action pursuant to 28 U.S.C. § 2254 challenging her conviction and sentence for conspiracy to distribute cocaine.[1] The state has answered the petition, *inter alia*, through the timely invocation of the procedural default doctrine. As the court is persuaded that the procedural default doctrine bars consideration of petitioner's claims, the petition shall be dismissed with prejudice.

### I

The facts underlying Ms. Anthony's case were set forth as follows in the reported opinion of the Maryland Court of Special Appeals affirming her conviction on direct appeal:

At approximately 6:30 p.m. on June 15, 1995, Trooper First Class Keith Elzey, a member of the Maryland State

---

**1.** Ms. Anthony states that she is also seeking relief under 42 U.S.C. § 1983, *i.e.,* an injunction directing the trial judge to order her immediate release. Pet. at 2, 14. No such claim lies under federal law. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *see also Leonard v. Hammond,* 804 F.2d 838, 840 (4th Cir.1986). Thus, Ms. Anthony's claim under § 1983 is patently untenable and shall be dismissed.

Police Drug Enforcement Division, was working in an undercover capacity investigating drug activity in Grasonville, Queen Anne's County. He pulled his unmarked vehicle up to the house at 200 Schoolhouse Lane, the residence of a man known as Bosley and his girlfriend, Tanya. A woman, whom Trooper Elzey identified at trial as appellant, approached him and asked if he was "looking for Bosley." When the trooper replied that he was, she told him that Bosley was asleep, and asked him "how much" he wanted. Trooper Elzey understood her to be asking how much crack cocaine he wanted. Trooper Elzey responded that it was "okay," and asked her what was "going on." Appellant told him that Bosley was "all out," which Elzey understood to mean all out of crack cocaine. Trooper Elzey then asked about Tanya. Appellant told him that Tanya had "gone to get a hit." Appellant offered to take the trooper somewhere, he believed to get some crack cocaine, but he declined. Appellant then told him to come back and "do some partying," which he understood to mean "smoke crack cocaine."

Trooper Elzey left, but returned to the house a short time later. At that time, he saw appellant and Tanya in the front yard. He stopped his vehicle. Trooper Elzey, Tanya, and appellant had a conversation about crack cocaine after which Trooper Elzey and Tanya left together in the trooper's car. Trooper Elzey subsequently dropped Tanya off at a different location.

The trooper returned to Schoolhouse Lane at approximately 7:45 p.m. He saw appellant and another woman at the Senior Center on Route 18, near Schoolhouse Lane, and heard appellant call to him. When he pulled over, appellant asked whether Tanya had "taken care" of him. He replied that Tanya had given him "a few crumbs," meaning some crack cocaine. Appellant then told Trooper Elzey, "[T]hat is the way she is,

just a crack-head." She then told the trooper, "Come on, I'll get something." Appellant, Trooper Elzey, and the other woman got into the trooper's car and appellant told the trooper to drive to Cemetery Road. While they were on that road, appellant yelled, "There he is," and told Trooper Elzey to stop. The trooper did so. Appellant asked Trooper Elzey for money. The trooper gave appellant $20, and told her to get him "twenty." Appellant then exited the vehicle and approached Paul Richardson, a man from whom the trooper had previously bought crack cocaine.

After appellant and Richardson conversed, Richardson handed appellant a substance and appellant handed him the $20. Appellant returned to the car and got in. Trooper Elzey and the two women left the area.

When they were back on Route 18, appellant handed Trooper Elzey the suspected crack cocaine. Trooper Elzey told her that he had to go and instructed her to leave the car. At that time, appellant "started yelling, screaming, cussing, saying that she wasn't going anywhere until we did some partying." The unidentified woman, who to that point had not said anything, got out of the car and told appellant to do the same. Appellant "kept on cussing, and saying she wasn't going anyplace until we lit up, lit up, smoked the crack." Trooper Elzey again told appellant to get out of the car, but "[s]he just said not until we party and smoke some crack." Eventually, after half a minute to a minute, appellant exited the car and walked away.

*Anthony v. State,* 117 Md.App. 119, 699 A.2d 505, 507–08, *cert. denied,* 348 Md. 205, 703 A.2d 147 (1997).

On appeal, Ms. Anthony argued: (1) there was insufficient evidence to support her conviction; and (2) error at sentenc-

ing.[2] Ans., Exh. 5. Upon the affirmance of her conviction by the Court of Special Appeals, she filed, through private counsel, a petition for writ of *certiorari* in the Maryland Court of Appeals. She contended:

(1) There was insufficient evidence to support her conviction;

(2) Error by the trial court in denying her motion for judgment of acquittal;

(3) Error by the trial court in allowing the jury to consider circumstantial evidence;

(4) Error by the trial court in applying Md. Ann.Code Art. 27, § 38 at sentencing; and

(5) The imposition of a fifteen year sentence constituted cruel and unusual punishment and denied her "equal justice."

*Id.*, Exh. 9. The petition for writ of *certiorari* was denied on December 10, 1997. *Id.*, Exh 11.

Ms. Anthony filed a petition for state post conviction relief on May 13, 1998. In her post conviction petition, she contended that trial counsel rendered ineffective assistance in a dozen separate respects and that, considering counsel's alleged missteps either singly or in the aggregate, she was entitled to relief.[3] The Circuit Court for Queen Anne's County held a hearing

on the petition on July 22, 1998, and the court filed its written opinion denying the petition on September 1, 1998. *Id.*, Exhs. 13, 14.

Ms. Anthony filed and, of significance to this case, the Court of Special Appeals *granted*, an application for leave to appeal the denial of post conviction relief. *Id.*, Exh. 16. In her briefs on appeal from the denial of post conviction relief, Ms. Anthony argued:

(1) The post conviction court erred in concluding that she was not deprived of the effective assistance of counsel;

(2) The post conviction court erred in concluding that certain of her claims had been previously and finally litigated; and

(3) The post conviction court erred in not addressing each of her claims.

*Id.*, Exhs. 17, 19.

In an unpublished opinion filed on June 11, 1999, the Court of Special Appeals affirmed the denial of post conviction relief. *Id.*, Exh. 20. Ms. Anthony did not file a petition for writ of *certiorari* to the Court of Appeals, as Maryland law indisputably allows, *Williams v. State*, 292 Md. 201, 438 A.2d 1301, 1305 (1981), but instead, acting through privately retained counsel, she filed the instant petition for relief pursuant to 28

---

**2.** Ms. Anthony was represented on appeal by counsel from the Office of the Public Defender. Approximately a week after its brief was submitted on her behalf, she filed a *pro se* "supplemental brief" raising additional issues. Ans., Exh. 7.

**3.** She alleged that counsel: (1) Made a defective argument in support of her motion for judgment of acquittal; (2) Failed to argue in support of the motion for judgment of acquittal that there was no evidence of advance planning between Ms. Anthony and Mr. Richardson; (3) Failed to ask that the foreperson of the jury be polled; (4) Failed to challenge and preserve for appellate review the issue of the legality of Ms. Anthony's sentence under Art. 27, § 38; (5) Failed to object to a portion of the prosecutor's opening statement where he said that "What [the trooper] says controls, not what I say;" (6) Failed to file a motion in

limine asking that Trooper Elzey not be permitted to testify that Ms. Anthony had agreed to purchase crack cocaine for him; (7) Failed to object to testimony by Trooper Elzey that he had previously purchased crack cocaine from Mr. Richardson; (8) Failed to effectively cross examine Trooper Elzey about his experiences with "look-alike" substances; (9) Failed to object to testimony by Trooper Elzey as to statements made by Ms. Anthony on the grounds that they were hearsay; (10) Failed to file a motion for modification or reduction of sentence, and when a hearing was held on Ms. Anthony's *pro se* motion, failed to present argument in support of it; (11) Failed to object to the judge's reference to the area where the incident took place as a heavy drug trafficking area; and (12) Failed to argue that a sentence of 15 years constituted cruel and unusual punishment. *See* Ans., Exh. 12.

U.S.C. § 2254 on August 3, 1999.[4] Thus, the State has invoked the procedural default doctrine, focusing primarily upon Ms. Anthony's failure to file a petition for *certiorari* in respect to her appeal of the denial of post conviction relief. Ms. Anthony has filed a reply asserting that she has fully exhausted her state court remedies, and alternatively, because she is actually innocent of the charge of conspiracy, this court should consider her claims on the merits. No hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *see also* Local Rule 105.6 (D.Md.1999).

## II

Before a federal court may award habeas relief to one challenging a state court conviction pursuant to 28 U.S.C. § 2254, it must determine as a threshold matter whether the petitioner has exhausted each claim presented to the federal court by first pursuing remedies available in state court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (interpreting 28 U.S.C.

§ 2254(b)(1), (c)); *Rose v. Lundy,* 455 U.S. 509, 521, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, the procedural default doctrine applies. *O'Sullivan,* 119 S.Ct. at 1734 (failure to include claims in petition seeking discretionary review before state supreme court); *Coleman v. Thompson,* 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(failure to note timely appeal); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram,* 409 U.S. 41, 46, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972) (failure to raise claim during post conviction). Where it is applicable, the procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *Murray,* 477 U.S. at 495, 106 S.Ct. 2639; *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In *O'Sullivan,* the Supreme Court resolved a conflict among the courts of ap-

4. The petition filed by counsel on Ms. Anthony's behalf contains a broad range of clearly cognizable claims and others that are clearly not cognizable: (1) She did not receive a fair trial because the trial judge did not require the prosecutor to prove beyond a reasonable doubt that her alleged coconspirator, Paul Richardson, had the specific intent to enter into a conspiracy to distribute cocaine and her trial attorney did not argue this ground in support of the motion for judgment of acquittal; (2) Ineffective assistance of counsel because: a. When trial counsel made a motion for judgment of acquittal he did not argue that there was no evidence of the specific intent by Mr. Richardson; b. When trial counsel made a motion for judgment of acquittal he failed to argue that there was no evidence of advance planning by Mr. Richardson and Ms. Anthony; c. At sentencing, trial counsel failed to object to the legality of the sentence under *State v. Simpson,* 318 Md. 194, 567 A.2d 132 (1989); d. Trial counsel failed to object to a part of the prosecutor's opening statement where he stated that what Trooper Elzey says "controls;" e. Trial counsel failed to make a motion in limine to prevent Trooper Elzey from using the term "crack" in his

testimony; f. Trial counsel failed to object to Trooper Elzey's testimony that he was familiar with Mr. Richardson from a prior drug deal; g. Trial counsel failed to cross examine Trooper Elzey regarding his familiarity with the practice of selling look alike substances as controlled dangerous substances; h. Trial counsel failed to object on hearsay grounds to Trooper Elzey's testimony as to remarks made by Ms. Anthony; i. Trial counsel was ineffective for failing to file a motion for reduction of sentence and in failing to argue in support of Ms. Anthony's *pro se* motion at a July 24, 1996 hearing; j. Trial counsel failed to object to a comment by Judge Sause on the sentencing guidelines sheet that the incident took place in a heavy drug trafficking area; (3) In ruling on the appeal of the denial of post conviction relief, the Court of Special Appeals failed to adequately address the arguments presented by Ms. Anthony; (4) The trial judge has "demonstrated deliberate indifference" to her constitutional claims by responding to a letter sent to him by Ms. Anthony in June 1999 by stating that she has not presented anything new nor any reason why her sentence was illegal.

peals over the question of whether the exhaustion requirement mandates that a federal habeas petitioner seek discretionary review from a state court of last resort within the normal processes of his state's scheme of appellate review of criminal convictions. *See* 119 S.Ct. at 1731. The Court reasoned that, in keeping with its earlier pronouncements, while extraordinary efforts at exhaustion are never required, *properly* exhausted claims—those not barred by the procedural default doctrine, *see id.* at 1734—include only those which were presented in an application for such discretionary review, at least where such discretionary review procedures exist and where the state court has not made clear by rule or practice that applications for discretionary review were unnecessary to exhaustion. *Id.* at 1732–33; *see also id.* at 1734–35 (Souter, J., concurring).

Thus, the exhaustion requirement must be satisfied by seeking review of any ostensible federal claim in the highest state court with jurisdiction to consider the claim. In Maryland, this would include, on direct appeal, the filing of a petition for *certiorari* with the Court of Appeals of Maryland. *See* Md.Code Ann., Cts. & Jud. Proc. § § 12–201, 12–301. Ms. Anthony filed such a petition. However, it has long been the rule in Maryland that, except in extraordinary circumstances, claims of ineffective assistance of counsel are not cognizable on direct appeal. *See State v. Zimmerman,* 261 Md. 11, 273 A.2d 156, 163 (1971); *Johnson v. State,* 292 Md. 405, 439 A.2d 542, 559 (1982); *Harris v. State,* 295 Md. 329, 455 A.2d 979, 983 (1983); *see also Hunt v. State,* 321 Md. 387, 583 A.2d 218, 227

(1990), *cert. denied,* 502 U.S. 835, 112 S.Ct. 117,·116 L.Ed.2d 86 (1991). Rather, such claims are generally cognizable only in state post conviction proceedings.

Furthermore, under the Maryland Post Conviction Procedures Act and the related rules of court, exhaustion requires the federal petitioner to file an application for leave.to appeal to the Court of Special Appeals. *See* Md.Code Ann., Art. 27 §§ 645A and 645I; Md.Code Ann., Cts. & Jud. Proc. § 12–302(e). If the Court of Special Appeals denies the application for leave to appeal, then there is no further review available and the claim is exhausted. Md.Code Ann., Cts. & Jud. Proc. § 12–202; *cf. Bell v. Jarvis,* 198 F.3d 432, 434 (4th Cir.1999)(exhaustion of post conviction remedies complete where review was sought from intermediate appellate court and state law *does not permit review by state supreme court* ). However, if the application for leave to appeal in a post conviction case is *granted,* then the decision of the Court of Special Appeals is subject to the ordinary discretionary review procedures in the Court of Appeals by grant of the writ of *certiorari. Williams,* 438 A.2d at 1307.

### III

Ms. Anthony failed to exhaust her ineffective assistance of counsel claims (her principal claims here) because she failed to do what *O'Sullivan* requires: she failed to present those claims to the Maryland Court of Appeals in a petition for *certiorari* after the Court of Special Appeals had granted her application for leave to appeal and affirmed the denial of post conviction relief.[5] The Court of Appeals of

---

5. Ms. Anthony's claim that the trial judge demonstrated deliberate indifference to her constitutional claims by not responding in full to a letter she sent him in June 1999 has not been presented to any state court. However, even if not procedurally defaulted, neither this claim nor the claim of error by the Court of Special Appeals constitutes a basis for federal habeas corpus relief. *Wright v. Angelone,* 151 F.3d 151, 158 (4th Cir.1998) (defects in

collateral proceedings not a basis for federal habeas corpus relief) (citing *Bryant v. Maryland,* 848 F.2d 492, 493 (4th Cir.1988)).· Finally, to the extent she seeks to assert a *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), sufficiency of the evidence due process claim, it is patent that the presumptively correct, *see* 28 U.S.C. § 2254(d), factual summary recited by the state Court of Special Appeals and set forth in

Maryland has never had an opportunity to consider those claims. Accordingly, they are procedurally defaulted as the state insists.

The procedural history and the result in this case should not go unnoticed by practitioners handling post conviction cases in Maryland. For many years, it has been the routine practice of the Maryland Court of Special Appeals to deny, in one-sentence, *per curiam* orders, applications by prisoners for leave to appeal the denial of post conviction relief. Most practitioners will agree that it is somewhat unusual for the Court of Special Appeals to grant leave to appeal and then affirm the denial of post conviction relief. Ms. Anthony's case presents a relatively rare instance in which the Court of Special Appeals eschewed the *per curiam* denial of leave to appeal but, instead, *granted* the application and *affirmed* the post conviction court's judgment denying relief.

Whether this case signifies a change in the historical practice of the Court of Special Appeals is obviously uncertain; counsel may well have been surprised that that court actually granted the application for leave to appeal in January 1999.[6] In any event, however, counsel should not have been unalert to the need to file a petition for *certiorari* as a part of the post conviction proceedings since *O'Sullivan* was decided by the Supreme Court on June 7, 1999, in advance of the Court of Special Appeals' decision affirming the denial of post conviction relief on June 11, 1999. Under the circumstances, the Court of Appeals never having been afforded the opportunity to pass on Ms. Anthony's claims of ineffective assistance of counsel, a petition for *certiorari* should have been filed in advance of the institution of this case in this court. Those claims are therefore procedurally defaulted. *O'Sullivan,* 119 S.Ct. at 1734.

## IV

Ms. Anthony does not argue that there exists cause and resulting prejudice which should excuse her procedural defaults. Instead she asserts that her claims should be considered because she is "actually innocent of conspiring with Paul Richardson." Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo,* 513 U.S. 298, 314, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The miscarriage of justice standard is directly linked to innocence. *Id.* at 320, 115 S.Ct. 851. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315, 115 S.Ct. 851.

" 'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 1502, 140 L.Ed.2d 728 (1998) (quoting *Schlup,* 513 U.S. at 324, 115 S.Ct. 851). New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir.1999) (citation omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson v. Greene,* 155 F.3d 396, 404–05 (4th Cir.), *appl. for stay and cert. denied sub. nom. Wilson v. Taylor,* 525 U.S. 1012, 119 S.Ct. 536, 142 L.Ed.2d 441 (1998). The new evidence must do more than undermine

---

text demonstrates that no colorable due process claim has been alleged.

**6.** It is difficult to see why counsel would not have realized, however, that the appeal should be treated as if it were a direct appeal for exhaustion purposes. The Court of Spe-

cial Appeals specifically granted the application for leave to appeal by its order and specifically transferred the case to its regular appeal docket and ordered supplemental briefing. *See* Ans., Exh. 16.

the finding of guilt; it must affirmatively demonstrate innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir.1999). To invoke the actual innocence exception to the procedural default doctrine, a defendant "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851.

Manifestly, Ms. Anthony possesses no new evidence to offer in support of her claim of actual innocence. She simply reiterates her arguments concerning the sufficiency of the evidence presented at trial. This is not a basis for invoking the actual innocence exception to the procedural default doctrine. *Calderon*, 118 S.Ct. at 1502.

V

For the foregoing reasons, a separate Order will be entered dismissing with prejudice the petition for writ of habeas corpus.