Earl CLANTON, Petitioner,

v.

Toni BLAIR, et al., Respondents.

Civ. A. No. 85–0224–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 18, 1985.

Thomas Rawles Jones, Jr., Moffitt & Jones, Alexandria, Va., for petitioner.

Thomas D. Bagwell, Asst. Atty. Gen., Richmond, Va., for respondents.

MEMORANDUM

MERHIGE, District Judge.

Petitioner, who is incarcerated at Mecklenburg Correctional Center and is under a sentence of death imposed by the Circuit Court of Petersburg, Virginia, has by counsel petitioned the Court for the issuance of a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.

In response to the Court's order to respond to the petition, respondents filed a motion to dismiss. Petitioner initially failed to respond. After the time for filing of petitioner's response had elapsed, respondents filed a motion for summary judgment; that motion merely referred to the respondents' previously filed motion to dismiss, without introducing any new legal arguments or evidence. Petitioner thereafter filed a document styled "Petitioner's Memorandum in Response to Motion for Summary Judgment." Though filed late, the response will be considered since respondents have filed a response thereto.

Neither party has sought a hearing on the pending motions and the Court is now in a position to dispose of a number of the issues raised. *See* Rule 8 foll. 28 U.S.C. § 2254. The Court shall therefore address each claim presented and dispose of those that may be resolved on the record as it stands. This approach facilitates the orderly and full presentation at the hearing of such claims that remain.

BACKGROUND

On March 13, 1981, a jury found petitioner guilty of capital murder in the commission of robbery while armed with a deadly weapon, in violation of Va.Code § 18.2–31(d). The verdict followed evidence presented on that and the previous day. Petitioner was represented at trial by counsel whom the trial court had appointed following the withdrawal of petitioner's original court-appointed attorney. Trial counsel began representing petitioner sometime late in December, 1980.

Petitioner's conviction arose out of the murder of Wilhemina Smith on November 16, 1980. The victim had resided in an

apartment across the hall from the apartment of petitioner's girlfriend, Natalie Lawrence. Petitioner himself was residing with Ms. Lawrence at her apartment during the period shortly prior and up to the time of the victim's murder. At about 12:30 p.m. on the date of the murder, a neighbor of the victim notified police of suspicious noises coming from the victim's apartment. Two police officers arrived shortly thereafter and found the victim dead on a bedroom floor with cuts on her throat and a belt drawn tightly around her neck. Petitioner was found hiding under the bed in a second bedroom. The Virginia Supreme Court has well summarized the evidence presented at trial, in its disposition of petitioner's appeal of his conviction. *Clanton v. Commonwealth*, 223 Va. 41, 286 S.E.2d 172, 174–76 (1982). The Court need not elaborate further.

The sentencing stage of the proceeding immediately followed the return of the guilty verdict. The jury found that petitioner should be sentenced to death, and the trial court, on May 1, 1981, imposed that sentence after duly considering the report of the probation officer as required by Va.Code § 19.2–264.5. As with the evidence presented at the trial on the merits, the Virginia Supreme Court has well summarized the evidence presented at the sentencing stage, *Clanton, supra,* 286 S.E.2d at 176, obviating any need to recount that presentation here. As indicated, petitioner appealed his conviction to the Virginia Supreme Court, alleging five grounds for error on the conviction.[1] 286 S.E.2d at 176. After reviewing those grounds, the Virginia Supreme Court concluded that none was meritorious. *Id.* at 176–181.

Proceeding with new counsel, petitioner thereafter filed a petition for a writ of habeas corpus in the Circuit Court for the City of Petersburg, pursuant to Va.Code § 8.01–654(B). After a plenary hearing,

the Circuit Court denied the petition in a letter opinion. Petitioner sought to appeal that disposition, but the Virginia Supreme Court refused his petition for appeal, based on the record and the briefs of the parties. This action followed.

DISCUSSION

Petitioner's primary argument for the issuance of a writ of habeas corpus is that his conviction was obtained in violation of the Sixth Amendment because of ineffective assistance of counsel. He enumerates a variety of alleged errors by his trial counsel that he argues constitute ineffective assistance. In addition, petitioner contends that the writ of habeas corpus should issue because the Commonwealth's evidence allegedly did not establish beyond a reasonable doubt that a robbery had been committed.

*I. Exhaustion.*

 Respondents contend that petitioner had failed to exhaust state remedies with respect to some of the claims asserted in his petition. In general, a "mixed petition"—that is, a petition that contains both exhausted and unexhausted claims—must be dismissed for failure to satisfy the exhaustion requirement of 28 U.S.C. § 2254(b). *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982). Nevertheless, the Court of Appeals for the Fourth Circuit holds that the state may waive the exhaustion requirement, *Sweezy v. Garrison*, 694 F.2d 331 (4th Cir. 1982), at least so long as the state's waiver is not conditional. *Harding v. North Carolina*, 683 F.2d 850, 852 (4th Cir.1982). Respondents have expressly and unconditionally waived, in blanket fashion, the exhaustion requirement with respect to any unexhausted claims in the instant petition. Accordingly, the issues presented are ripe for disposition.

---

1. The grounds included four alleged errors of the trial court: (i) denying Clanton's motion for a change of venue or venire, 286 S.E.2d at 177; (ii) admitting certain autopsy photographs of the victim, *id.;* (iii) failing to instruct the jury to disregard allegedly improper arguments of the prosecutor, *id.* at 178; (iv) allegedly improperly answering a question that the jury submitted to the trial court after retiring to deliberate Clanton's guilt or innocence, *id.* at 179. Clanton's fifth ground on appeal was that Virginia's death penalty statute is unconstitutional because it is overly broad and impermissibly vague. *Id.* at 181.

## II. Ineffective assistance.

### A. Legal standards.

The Supreme Court has recently clarified the legal standards for determining when an attorney's alleged failure to render adequate legal assistance in a criminal trial violates the client's right to counsel under the Sixth Amendment. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth two basic elements that a petitioner must establish in order to make out such a Sixth Amendment violation. First, counsel's acts or omissions complained of must reflect unreasonable professional judgment, in light of all the circumstances. *Id.* at ——, 104 S.Ct. at 2065. While unreasonable professional judgment is always the standard against which the counsel's conduct in question is measured, the seriousness of the charges against the defendant is a factor to be considered in evaluating whether counsel's conduct reflects unreasonable professional judgment. *See Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir.1983). A given level of preparation or investigation, for example, may be professionally reasonable for one type of criminal charge—*e.g.*, a misdemeanor,—yet may be unreasonable for charges carrying weightier penalties. *Strickland* makes clear, however, that there is always a strong presumption in ineffective assistance claims that counsel's conduct is not unreasonable. *Id.*

Second, *Strickland* requires a petitioner to establish that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* 466 U.S. at ——, 104 S.Ct. 2067. A "reasonable probability" is "a probability sufficient

to undermine confidence in the outcome." *Id.* This is more than a showing that the errors had "some conceivable effect" on the outcome, but less than a showing that the errors "more likely than not" affected the outcome. *See id.*

### B. Specific allegations.

Petitioner has alleged a number of specific omissions on the part of his trial counsel that, he contends, rise to the level of sixth amendment violations. The Court shall address those contentions seriatim.

*1. Claim 9(a): failure to raise colorable claims concerning the unconstitutionality of Virginia's death penalty statutes.*

The aspect of trial counsel's performance about which petitioner first complains is his alleged failure to raise colorable claims concerning the unconstitutionality of Virginia's death penalty statutes, asserted in Paragraph 9(a) of his petition.[2]

*a. Deliberate bypass.*

At the outset, respondents raise the objection of "procedural default/deliberate bypass" to this claim, as well as to many of petitioner's other claims. They point out that, while petitioner did raise this claim at the circuit court level of his state habeas corpus proceeding, he failed to include it in his petition for appeal from the circuit court's denial of habeas corpus relief. Respondents contend that, in light of Virginia's rules governing petitions for appeal to Virginia's Supreme Court,[3] petitioner has deliberately bypassed his state remedy with respect to this claim and is therefore precluded from raising it in this federal habeas corpus proceeding.

Petitioner candidly acknowledges that he did not include, in his petition for appeal

---

2. The Court shall initially refer to each of petitioner's claims by the number of the paragraph and, where applicable, the letter of the sub-paragraph in his petition in which the claim is asserted. Both parties frequently refer in their briefs to petitioner's claims by those numbers. Given the number of claims petitioner has asserted, the Court believes that any appellate review that may arise will be aided if the Court continues to follow the practice that the parties began in their briefs.

3. Virginia Supreme Court Rule 5:21 states, in pertinent part, as follows: .

> Only errors assigned in the petition for appeal will be noticed by this Court and no error not so assigned will be admitted as a ground for reversal of a decision below.

Va.S.Ct.R. 5:21.

from the circuit court's denial of his state habeas petition, a claim of ineffective assistance of counsel based on the omissions he alleges in Paragraph 9(a) of the instant petition. Further, he does not take issue with respondent's position that the failure to pursue a claim in the petition for appeal, after having the claim decided against him at the state level, amounts to a deliberate bypass of available state remedies and bars pursuit of that claim in a federal *habeas corpus* proceeding. Rather, petitioner contends that he in no way bypassed his state remedies. He points out that at both the circuit court and Virginia Supreme Court levels of his state *habeas corpus* proceeding he raised the claim of ineffective assistance of counsel. He characterizes that claim as one directed towards his trial counsel's "overall ineffectiveness," and portrays the specific instances of ineffectiveness asserted in his various petitions as merely illustrative of one single claim of overall ineffectiveness, which he purports to assert here, rather than a series of ineffective assistance claims.

Petitioner relies on *Vela v. Estelle*, 708 F.2d 954 (5th Cir.1983), *cert. denied*, 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984). In *Vela*, the Court of Appeals for the Fifth Circuit held that a federal habeas petitioner had satisfied the exhaustion requirement for all specific instances ineffective assistance alleged in his federal *habeas* petition by presenting to the state court, while proceeding *pro se*, a habeas petition that argued ineffective "on the basis of counsel's entire performance." *Id.* at 959.

*Vela* does not govern the issue at hand, however. Despite his argument to the contrary, petitioner has never argued ineffectiveness "on the basis of counsel's entire performance." A review of his habeas petition before the circuit court, as well as his petition for appeal, makes it evident that petitioner has based his claims for ineffective assistance on specific omissions by his trial counsel, not on some blanket theory of ineffectiveness.[4]

### b. Merits.

In any event, the issue is moot, for the Court finds this particular claim of ineffective assistance without merit. Trial counsel did not ignore the possibility of a constitutional challenge to Virginia's statute. Rather, as the transcript of his testimony at the plenary hearing in the state habeas proceeding reflects, he researched the issue until he satisfied himself that constitutional challenges would not be worthwhile. Petitioner's counsel reviewed decisions of the Virginia and the United States Supreme Courts. He did not consider lower court decisions and law review articles. The Court concludes, however, that his research, though not as extensive as petitioner would have desired, was a far cry from constituting unreasonable professional conduct.

Additionally, petitioner has not articulated any prejudice whatsoever arising from trial counsel's allegedly unreasonable conduct in this regard, thereby failing to meet the first prong of the *Strickland* test. Nor has he suggested any constitutional

---

**4.** In Paragraph 8 of his state habeas petition, petitioner stated that his court appointed trial attorney "failed to render effective ... in numerous respects at many critical points in the judicial process, to petitioner's prejudice, in the following manner." Petitioner then enumerated a variety of specific omissions, and in no way indicated that those instances were merely illustrative of overall ineffectiveness in his trial counsel's entire performance.

Petitioner's petition for appeal characterizes the ineffectiveness issue in similar fashion. Even that portion of his petition for appeal to which petitioner in his brief has referred this Court does not support his characterization of the appeal as one based on ineffectiveness in

trial counsel's entire performance. He argued that:

> Assuming *arguendo* that not one of counsel's failures were sufficient by itself to establish constitutionally ineffective representation, *the series of actions and inactions described herein,* taken as a whole, clearly establishes that petitioner's constitutional right to effective representation was violated.

Petition for Appeal, 32 (emphasis added).

Petitioner was merely inviting the Virginia Supreme Court to consider the cumulative effect of all the alleged errors he had specifically addressed. He plainly did not call that Court's attention to any performance of his trial counsel other than that specifically raised in the petition for appeal.

**1498**

challenges to Virginia's death penalty statute that had any possibility of success.[5] Petitioner has failed, then, to meet the second prong of *Strickland* for this claim. Accordingly, the instant claim must be dismissed.

*2. Claim 9(b): failure to determine whether exculpatory evidence existed.*

■ Petitioner alleges that his trial counsel was ineffective because he failed to determine whether there was exculpatory evidence that could be used to petitioner's advantage at trial. Petitioner failed to specify any such exculpatory evidence in the petition itself. His brief in opposition to summary judgment does suggest, though, that he believes trial counsel neglected to discover or to "realize the significance" of the fact that there were no blood-stains on the interior of the left pocket of the pants petitioner was wearing when he was found in the victim's apartment. Petitioner points out that the eight dollars removed from petitioner's pants pocket after he was handcuffed at the victim's apartment was found in petitioner's left front pocket, according to testimony at trial. The arresting officers also testified that the money was wet with blood at the time.[6] Petitioner suggests that the absence of blood stains in his left pocket[7] undercuts the testimony that the money was wet with blood when it was found. He argues that this, in turn, undermines any inference that petitioner took the money from the victim.

There is no dispute that petitioner's trial counsel had seen the pants in question prior to trial and was familiar with the blood patterns on them. Furthermore, the circuit court determined, after a hearing on petitioner's state habeas petition, that the presence or absence of blood in petitioner's left pocket, was not exculpatory. Letter Opinion of Judge Oliver A. Pollard, at 3 (November 18, 1983) (hereinafter "Letter Opinion").[8] This would appear to be a factual finding, and therefore entitled to the presumption of correctness under 28 U.S.C. § 2254(d).

In any event, this Court, like the State Circuit Court, discerns nothing exculpatory about the absence of blood in petitioner's left pocket. It does little to undercut the testimony that the money was wet with blood, contrary to petitioner's protestations here. It could, for example, reflect only that the officer testifying confused the pocket from which he took the money, especially in light of the testimony that the interior of petitioner's right front pocket was lightly blood-stained.[9] Further, a forensic scientist testified at trial that there was a large blood-stain on the five-dollar bill and smaller stains on the three one-dollar bills, and that those blood-stains were of a type consistent with both the victim's and petitioner's blood. In addition, as respondents suggest, because the bills were wadded up, the blood-stained portions of them may not have been exposed to the interior of petitioner's pocket. The absence

---

**5.** The only potential constitutional attack that petitioner suggests trial counsel could have made is one based on "proportionality review" being constitutionally mandated. The Court does not perceive how trial counsel could have challenged the constitutionality of Virginia's death penalty statutes, however, as Virginia required a proportionality review by the Supreme Court of any sentence of death, *see* Va.Code § 17–110.1(c)(2), at the time of petitioner's trial. 1977 Va.Acts c. 492. Indeed, the Virginia Supreme Court did review petitioner's death sentence for proportionality and concluded that it was not disproportionate in light of other Virginia cases in which the death penalty had been imposed. *See Clanton, supra,* 286 S.E.2d at 181.

**6.** Transcript of trial proceedings (hereinafter "Trial Trans.") at 162–63.

**7.** Trial Trans. at 227.

**8.** A copy of the Letter Opinion is attached to this memorandum as Appendix A. The opinion, which is incorporated by reference in the circuit judge's order denying the petitioner's state habeas petition. For some reason, however, the Letter Opinion was not included in the state records forwarded to the Court. The Court, by telephone, contacted counsel for respondents, who provided the attached copy of the opinion, and then advised counsel for petitioner of the situation and of the Court's procedure in addressing it. Counsel for petitioner had no objections to the procedure.

**9.** Trial Trans. at 227.

of blood stains in the left pocket is of little significance, then. Indeed, the Court notes that the absence of blood on the left pocket can be viewed as further implicating petitioner, rather than tending to exculpate him. It eliminates at least one possible explanation for blood on the money that would be consistent with petitioner's story: that is, that the money had been in his pocket when he first entered the victim's apartment, and that the blood had seeped through his pants onto the money while he was rendering her aid.

Because the absence of blood in petitioner's left pants-pocket is not exculpatory and because petitioner has not articulated any other manner in which his trial counsel failed to determine whether exculpatory evidence existed, petitioner has not established any unreasonable professional conduct by his trial counsel in this claim, much less any prejudice resulting therefrom. Thus, he has failed to meet both prongs of the *Strickland* test, and this claim must be dismissed.

*3. Claim 9(c): failure to file motion for a bill of particulars or for discovery and inspection.*

██ Petitioner has also asserted that his trial counsel was ineffective due to his failure to file motions for a bill of particulars, or for discovery and inspection. It is undisputed, however, and the record plainly reflects that the Assistant Commonwealth's Attorney in charge of the prosecution had given petitioner's counsel free access to the Commonwealth's file on petitioner's case throughout the course of the prosecution. Under these circumstances, it is difficult for the Court to view counsel's failure to file discovery motions as unreasonable. Thus, petitioner would appear to have failed the first prong of the *Strickland* test. In any event, the transcript of the state *habeas* hearing reflects that petitioner's trial counsel was aware of all the evidence presented at trial. Petitioner thus has not demonstrated any prejudice as a result of these alleged errors, and has

thereby failed to satisfy the second prong of *Strickland.*

*4. Claim 9(d): failure to advise petitioner adequately of the strength of the Commonwealth's case and the advisability of accepting the Commonwealth's plea offers.*

██ For the first time in any of his habeas corpus proceedings, petitioner contends that his trial counsel was also ineffective for failing to advise him adequately of the strength of the Commonwealth's case and the advisability of accepting the Commonwealth's plea offer.[10] Petitioner's present counsel first learned of any plea offers during the plenary hearing on his state habeas petition.

Respondents argue that the issue is procedurally barred, so that the Court need not reach its merits. They call attention to a Virginia procedural rule requiring a petitioner to assert "all allegations the facts of which are known to petitioner at the time of filing," and providing that "no writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va.Code § 8.01–654(B)(2).

Failure to comply with this rule may, indeed, preclude the assertion of a claim under 28 U.S.C. § 2254. *Grooms v. Mitchell,* 500 F.Supp. 137, 139 (E.D.Va.1980); *see also Murch v. Mottram,* 409 U.S. 41, 45–46, 93 S.Ct. 71, 73–74, 34 L.Ed.2d 194 (1972) (upholding the power of a state to statutorily preclude a prisoner from seeking habeas corpus relief based on claims of which prisoner was aware at time of filing previous motion for post-conviction relief). The procedural context in which the instant claim arises is somewhat different from that in which the claims in *Grooms* and *Murch* arose, however. Here, unlike in those cases, no state court applied its statute to procedurally bar the petitioner's successive claim. Further, respondents have waived exhaustion. But petitioner does not

---

**10.** The fact that this claim is raised for the first time here does not, however, require the court to dismiss the petition under *Rose v. Lundy* for

failure to exhaust, because the state has waived exhaustion, as discussed in the text *supra.*

attempt to avoid the application of the Virginia's statute on this ground. Accordingly, the Court need not consider whether the difference in procedural contexts is material to the application of the state statutory rule.

In any event, petitioner's assertion of the claim stated in 9(d) does not appear to contravene Virginia's statute in issue here. It requires that the petition contain all allegations the facts of which are known to the petitioner "at the time of filing." Here, however, petitioner's counsel did not learn of the existence of any plea offers until well after the state habeas petition had been filed. It further appears that petitioner himself may not have known of the existence of the plea offers until that late date. It is thus questionable whether "petitioner had knowledge at the time of filing" his state habeas petition of the facts that constitute the basis of this allegation, within the meaning of Va.Code § 8.01–654(B)(2).

Because this proceeding is the first one in which the instant claim has been presented, the facts are not well developed. Thus, it is difficult for the Court to address either prong of the *Strickland* test on the present record. If the allegations are proved, however, the possibilities of both unreasonable professional conduct and prejudice are obvious. The Court shall grant a hearing to develop the relevant facts on this issue.

*5. Claims 9(e)–(h): inadequate conduct during voir dire.*

Petitioner also alleges that his trial counsel's performance was ineffective in several ways during the voir dire of prospective jurors. The questions were posed to the prospective jurors during voir dire by the circuit judge himself, who questioned them in groups of three. He called a total of thirty-five; of that number, he excused twelve for cause, obtaining the twenty-three people from whom the twelve jurors and single alternate would be chosen.

With respect to each of petitioner's claims based on the voir dire, respondents initially point out the circuit judge's conclusion that petitioner's trial counsel was not ineffective in his conduct at voir dire. *See* Letter Opinion at 3–4. They rely on *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), to suggest that this conclusion is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Respondents' suggestion is incorrect, however. It is true, of course, that written factual determinations made after hearing by state trial or appellate courts are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). The determination at issue here, however, is not a factual one. Rather, it is a mixed question of law and fact whether trial counsel's performance deprived a criminal defendant of effective assistance, and is therefore not entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Strickland, supra,* 466 U.S. at ——, 104 S.Ct. at 2069.

*a. Claim 9(e): Preconceived opinions of guilt.*

One of petitioner's specific complaints about his trial counsel's conduct at voir dire is that counsel failed to determine whether individual veniremen had preconceived opinions of petitioner's guilt. Petitioner has failed to call attention to any particular conduct, however. Nevertheless, the Court has reviewed in detail the transcript of the voir dire. As the transcript reflects, the circuit court judge himself questioned each set of veniremen thoroughly concerning any pre-conceived notions of petitioner's guilt.[11] He excused three of the thirty-three veniremen questioned because he concluded that they did have such fixed opinions.[12] And petitioner's trial counsel, on one occasion, asked the judge to clarify a venireman's response concerning whether his opinion was fixed,

---

**11.** *See* Trial Trans. of State Trial Proceeding (hereinafter "Trial Trans.") at 11, 18–20, 28, 36, 41, 44–45, 49–50, 57–58, 66, 76–77, 84–85, 91, 101–02.

**12.** *See* Trial Trans. at 19 (venireman Mayes), 44 (venireman Rhoda Brown), 57 (venireman Boston).

when counsel was uncertain of the response.[13]

It appears that petitioner may also be complaining about trial counsel's not seeking to have the veniremen questioned on an individual basis in this regard. The circuit judge generally questioned the veniremen on this issue by posing the issue to all three veniremen at the same time. He did pursue the issue on an individual basis, however, whenever veniremen indicated that they had been exposed to pretrial publicity in the case.

The Court discerns nothing unreasonable in the voir dire conduct of his trial counsel. The circuit judge himself questioned the veniremen reasonably and thoroughly to flesh out any preconceived notions of petitioner's guilt among the veniremen. When petitioner's trial counsel had additional questions about an individual venireman's responses, he raised them. In addition, petitioner has failed to allude to any prejudice whatever arising from trial counsel's conduct. Petitioner has failed to meet both prongs of the *Strickland* test; accordingly this claim must be dismissed.

*b. Claim 9(f): Influence of pretrial publicity.*

 Petitioner also argues that his trial counsel was ineffective at voir dire by failing to determine whether individual veniremen had been influenced, by pretrial publicity, to petitioner's prejudice. Again, petitioner fails to call attention to any particular conduct by trial counsel.

The Court has nevertheless reviewed the trial transcript, which reflects that the circuit judge questioned all the veniremen as to their exposure to pretrial publicity.[14] In some instances, the veniremen had not read or heard of the matter.[15] And in instances where veniremen had been exposed to pretrial publicity, as discussed *supra,* the trial judge pursued with each individual juror the issue of prejudice to the petitioner.

The record does reflect that in a number of the instances in which the trial judge pursued his inquiry on an individual basis with veniremen, he did not elicit responses about an individual venireman's exposure to pretrial publicity after questioning the first one in the two- or three-person group.[16] Further, petitioner's trial counsel did not ask the judge to pursue the issue among those veniremen that the trial judge had not specifically questioned.

Nevertheless, the Court discerns nothing unreasonable about such conduct by counsel. The trial judge followed up his questions concerning exposure to pre-trial publicity with questions concerning preconceptions about petitioner's guilt, as discussed *supra.* He excused any veniremen who had formed fixed opinions in that regard. He also inquired about prejudice against both the defendant and the state. Against such a backdrop, trial counsel's pursuit of questions concerning exposure to pretrial publicity would have been irrelevant to culling out veniremen who should be excused for cause, because the Court had already reached the heart of the issue with respect to pre-trial exposure to publicity—that is, whether the veniremen had developed a fixed pre-conception. *See, e.g., Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1960). The Court also notes that, again, petitioner has not alluded to any prejudice whatever arising from counsel's omissions. Petitioner has failed to satisfy both prongs of the *Strickland* test; therefore this claim must be dismissed.

*c. Claim 9(g): failure to pursue inadequate responses about prejudice.*

 Petitioner also claims that his counsel was ineffective because he failed at voir dire to pursue allegedly inadequate responses to leading questions concerning lack of prejudice. Petitioner failed to elaborate this allegation in any manner.

---

**13.** *See* Trial Trans. at 41.

**14.** *See* Trial Trans. at 10–11, 18–20, 27–28, 36, 44–45, 49–50, 56–58, 66, 75–76, 84, 90–91, 100–02.

**15.** *See* Trial Trans. at 10–11, 36, 84.

**16.** *See* Trial Trans. at 27 (Hyman and Smith not questioned); 44–45 (Paul Brown not questioned); 57 (Johnson not questioned); 90–91 (Rainey and Lewis not questioned).

Nevertheless the Court has, once again, reviewed the transcript of the voir dire in order to evaluate this claim.

The transcript reflects that many of the veniremen unambiguously indicated that they had formed no definite opinions concerning petitioner's guilt or innocence. There were, of course, certain veniremen who had formed opinions. But the trial judge inevitably probed those opinions.[17] In one instance petitioner's counsel asked the trial judge to further explore one venireman's responses on the issue, to which the trial judge agreed.[18]

While one may consider additional ways to question those veniremen on the nature of their opinions, the trial judge's questions did probe the heart of the issue, as discussed *supra*. And the transcript reflects that petitioner's counsel pursued responses that he felt were inadequate. No doubt he could have insisted that additional questions be posed to reach the issue of jurors' prejudice and to confirm their lack of prejudice. But in light of the responses given to the questions asked, the Court cannot conclude that trial counsel's failure to do so was unreasonable. Furthermore, petitioner has not articulated any prejudice whatever arising from trial counsel's alleged unreasonable omissions. Petitioner has failed to satisfy either prong of the *Strickland* test once again; accordingly, the instant claim must be dismissed.

*d. Claim 9(h): failed to object to excusing certain veniremen for cause.*

■ Petitioner also contends that his trial counsel was ineffective by not objecting when the trial judge excused veniremen because of their attitude towards the death penalty. He contends that counsel should have objected to excusing jurors who expressed "mere hesitation" about imposition of the death penalty, and should have insisted that those veniremen be asked questions to determine their ability to follow the court's instructions at the sentencing phase. Petitioner has again failed to allude to any specific instances of unreasonable conduct or to explain the resulting prejudice. Despite this, the Court has reviewed the transcript of voir dire to ascertain whether there may be any merit to this claim.

Two veniremen—Ms. Mains, and Mr. Paul Brown—were excused because of their inability to consider the death penalty. Both indicated unambiguously that they could not consider the death penalty in any case.[19] At the time of the voir dire, the United States Supreme Court had not clarified the standard for evaluating whether a prospective juror should be excluded for cause because of misgivings about the death penalty. *See Wainwright v. Witt,* — U.S. —, 105 S.Ct. 844, 846, 83 L.Ed.2d 841 (1985) ("standard is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions or his oath'"). Viewing the law most favorably to petitioner, the standard prevailing at the time of the voir dire was whether a potential juror "would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the time of the case...." *Witherspoon v. Illinois,* 391 U.S. 510, 522 n. 21, 88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776 (1968) (emphasis original).

The responses of Ms. Mains and Mr. Brown, which indicated that they could not consider the death penalty in any case, satisfy this standard. Petitioner's counsel could have asked the trial judge to confirm their responses by posing the question to each of them again, or in a slightly different way, in order to ensure against any mistaken understanding on the part of these two prospective jurors.[20] But neither

---

**17.** *See* Trial Trans. at 18–20, 41, 44–45, 75–76, 101–02.

**18.** *See* Trial Trans. at 41 (Perkins).

**19.** *See* Trial Trans. at 37–38 (Ms. Mains), 46 (Mr. Paul Brown).

**20.** Petitioner has not submitted any affidavit from the two prospective jurors indicating that they had misunderstood the question or were not automatically unable to impose the death penalty.

his failure to do so nor his failure to object to these jurors being excused, was unreasonable—even in view of the relevant legal standard prevailing at the time. Petitioner also has not suggested any concrete evidence of prejudice as a result of his counsel's conduct. He has therefore failed to meet both prongs of the *Strickland* standard; accordingly, this claim must be dismissed.

### 6. Claim 9(i): Failure to develop a coherent theory of defense.

Petitioner also argues that counsel was ineffective because he allegedly "failed to develop a structured and coherent theory of defense, so that his reaction and response to the Commonwealth's evidence, including his objections, failures to object, and his cross-examination, worked to petitioner's prejudice." Petitioner devotes much of his responsive brief to elaborating this claim.

Initially the Court observes that, contrary to petitioner's allegation, petitioner's trial counsel did not proceed to trial without a "structured and coherent theory of defense." Trial counsel proceeded on an alibi theory that placed petitioner in his girlfriend's apartment, across the hall from the victim's, at the time of the murder. According to the theory, petitioner was present in the victim's apartment because he had attempted to fend off the victim's attackers, evidence of whom his girlfriend had first noticed. He succeeded in chasing them off, he contended, but did not attempt to apprehend them for a variety of reasons. Further, so the theory went, petitioner hid under a bed when the police came and had failed to attempt to contact the police beforehand because he was, at that time, a fugitive. He did, however, consider calling for help, and picked up the victim's checkbook while grappling with the dilemma, thinking it was an address book. As for the blood on petitioner, he maintained that it was due to his attempts to render aid to the victim, not to kill her. Petitioner supported much of this theory with his own testimony and that of his girlfriend, Ms. Lawrence.

Reading petitioner's brief sympathetically, however, it may be that the instant claim is not that trial counsel failed to develop a structured defense theory; rather, it is that certain aspects of the defense he did prepare reflect either unreasonable choices or inadequate preparation. Petitioner criticizes two aspects of the defense in particular. The first was the calling of Ms. Lawrence to corroborate petitioner's testimony. This appears to be the first time that petitioner had focused on this particular aspect of the defense, and respondents submit that the claim is barred by the doctrine of procedural default/deliberate bypass. Assuming *arguendo* that no such ban exists, the Court has reviewed this on the merits.

Petitioner points out Ms. Lawrence's statement to the police—made after the murder but prior to trial—that petitioner told her he planned to choke and rob the victim. Calling Ms. Lawrence as a corroborating witness allowed her inconsistent and incriminating statement into the case, to petitioner's prejudice. Further, he points out that trial counsel knew of Ms. Lawrence's inconsistent statement. To call her under such circumstances was, so petitioner contends, outrageous.

The Court disagrees. The record reflects that from the outset petitioner wanted to testify to his version of the incident.[21] His trial counsel advised him of the need to corroborate such a story to give it credibility, and also advised him of the weakness of Ms. Lawrence as a corroborating witness because of the inconsistent statements she had made to the police.[22] It is unclear from the state *habeas* transcript whether counsel ultimately advised petitioner in favor of calling Ms. Lawrence to corroborate his story. Even if he did so advise, however, the Court cannot conclude that it was an unreasonable choice, in view of petitioner's insistence on testifying. Whether petitioner would have been better

---

**21.** Habeas Trans. at 139, 140.

**22.** Habeas Trans. at 139–40.

off testifying without corroboration is doubtful indeed, in view of the elaborate nature of his version of the events and his own limited credibility, as well as the fact that Ms. Lawrence was present.[23] Thus, petitioner has failed to demonstrate unreasonableness and prejudice in connection with this conduct.

█ The second aspect of his defense that petitioner criticizes was trial counsel's not focusing on the alleged weakness in the state's evidence with regard to petitioner's having committed any robbery in the course of the murder. In particular, he criticizes trial counsel's "failure to realize the significance" of the absence of blood on the interior of petitioner's left pants pocket, from which the money that the jury concluded he had stolen from the victim was taken. As discussed *supra*, however, the Court finds nothing exculpatory about this fact; similarly, it finds nothing unreasonable about trial counsel's not highlighting this fact at trial. Petitioner also criticizes trial counsel's final argument to the jury on the robbery issue, which he characterizes as an afterthought. A review of the trial transcript, however, reflects that his argument on the robbery issue was hardly an afterthought. It brought out the fact that the blood stains on the money were typed consistently with both petitioner's and victim's blood and recounted petitioner's testimony that he himself had been cut when he had been allegedly hit with a wooden spoon by one of the intruders, suggesting that the blood on the currency was petitioner's. It also questioned whether there was any proof that the eight dollars belonged to the victim and contended that there was none.[24] While petitioner's habeas counsel, looking back, may have emphasized the issue more in the presentation of evidence and the argument than trial counsel did, the Court finds nothing unreasonable about the manner in which trial counsel addressed the robbery evidence in the case. And petitioner has failed to suggest any prejudice beyond speculation.

Having found that petitioner has failed to establish both unreasonable conduct and the requisite prejudice in the defense his trial counsel developed with him, the Court must dismiss this claim for failure to meet both prongs of the *Strickland* test.

7. *Claim 9(j): failure to deal with lesser included offenses.*

█ Petitioner alleges that his trial counsel "failed to deal in any respect with the lesser included offenses that were available to the jury, thereby creating ... a situation in which imposition of the death penalty was more likely than would otherwise be the case." He does not elaborate these allegations in his brief.

Respondents argued initially that petitioner procedurally defaulted because he allegedly failed to appeal this allegation in his *habeas* petition to the Virginia Supreme Court. They appear to have abandoned this contention, however, in light of petitioner's having pointed out item (k) in the "Questions Presented" section of his petition for appeal, which stated that trial counsel was ineffective, *inter alia*, for his failure to "argue that attempted robbery would not support a capital murder conviction."

Respondents have also pointed out that the state *habeas* court concluded that trial counsel's assistance was not ineffective, in connection with this claim, and that under *Sumner v. Mata, supra,* this conclusion is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). For the reasons stated with respect to the same argument raised against plaintiff's allegations in 9(e) to 9(h), the Court rejects the argument here.

The gist of petitioner's argument appears to be that his trial counsel, by not discussing lesser included offenses during his final argument, allowed the jury to retire with the impression that the only serious issue before it was whether defendant was guilty of capital murder or not. It

---

**23.** The Court notes that petitioner's trial counsel did not call Ms. Lawrence without eliciting from her on direct examination an explanation concerning her inconsistent statement: that the

police had been harassing her. Trial Trans. at 316.

**24.** *See* Trial Trans. at 427–28.

is true that petitioner's trial counsel did not address any of the lesser included offenses in his final argument except for robbery, which is also an element of capital murder. The Court agrees that trial counsel perhaps could have more effectively raised doubts in jurors' minds on whether petitioner was guilty of capital murder, by attempting to show the deficiencies of the evidence with respect to each of the offenses charged. But petitioner presents no authority to support his assertion that this constitutes unreasonable conduct. And on the present record, it is difficult to conclude that trial counsel's conduct in this regard was unreasonable.

Assuming *arguendo* that it was unreasonable, however, petitioner must also establish the requisite prejudice under *Strickland* in order to succeed. One can speculate on how the alleged deficiency here may have worked to petitioner's disadvantage, but petitioner has not shown that the unreasonable conduct alleged here makes it "reasonably probable" that the outcome would have been any different than it was. Thus, petitioner has failed to meet the second prong of the *Strickland* test with respect to the instant claim. The Court must therefore dismiss it.

*8. Claim 9(k): failure to make motions to strike evidence of capital murder and robbery.*

▆▆ Trial counsel did not move to strike the Commonwealth's evidence of capital murder and robbery at the close of the Commonwealth's case. Further, he did not specifically raise the absence of robbery evidence in the general motion to strike the evidence that he did make at the close of petitioner's case. Petitioner contends that this conduct constituted ineffective assistance of counsel, because, he argues, there was insufficient evidence to show that the eight dollars found in petitioner's pocket belonged to the victim.

Respondents initially rely on the fact that the state habeas court found that trial counsel was not ineffective for the conduct at issue, and argues that this finding is entitled to the presumption of correctness under Section 2254(d). As discussed *su-*

*pra*, however, this "finding" is a mixed question of law and fact to which Section 2254(d) does not apply.

The state habeas court also found that the evidence was "entirely sufficient to support a finding that a robbery had occurred." *See* Letter Opinion at 4. The parties have not briefed the issue, but this too would appear to be a mixed question of law and fact that is not subject to the presumption of correctness, and therefore does not prevent the Court from analyzing the sufficiency of the evidence on its own in determining whether trial counsel was ineffective as alleged in the instant claim.

Respondents further rely on a statement by the Virginia Supreme Court in its written opinion disposing of petitioner's appeal from his conviction. In particular, the Virginia Supreme Court remarked that petitioner "strangled [the victim] with a belt, stabbed and cut her with a knife, and bruised her about the head in robbing her of $8 in currency." *Clanton, supra,* 286 S.E.2d at 180. Respondents suggest that this too amounts to a finding by the state court that the evidence was sufficient to establish robbery. Petitioner correctly points out, however, that the Virginia Supreme Court made this remark in the context of reviewing the appropriateness of the sentence, not in passing on the question of whether the evidence was sufficient to support a robbery finding. He appears to suggest that the remark is therefore not a finding on the issue. The Court need not resolve whether the remark is indeed a finding, however. For, even if it is, it would be treated in this proceeding in the same vein as the state habeas court's finding on the same issue. And, as discussed *supra*, it appears to the Court that the issue is a mixed question of law and fact and would therefore not be entitled to the presumption of correctness under Section 2254(d).

In any event, the Court itself has reviewed the evidence of robbery and concludes that it was sufficient. As discussed *supra*, petitioner contends that the evidence of robbery was insufficient in that

there was no evidence that petitioner took the eight dollars from the victim. However, Officer Chandler testified that the money was wet with blood when it was taken from petitioner's pocket.[25] The blood on the money was typed, and was found to be consistent with the victim's blood type (although it was also found to be consistent with petitioner's).[26] Petitioner himself had blood on much of his clothing, and on his hands and torso.[27] The evidence also suggested that the victim had just returned from purchasing several minor grocery items for a total of $4.69, when she was murdered.[28] The police found her lying near her purse, which had a red substance on both its inside and outside.[29] And the victim's check-book was found with blood-prints on it that matched petitioner's fingerprints.[30] Finally, although it was checked, the area around the victim—including the inside of her purse—did not contain any money; indeed, in the victim's entire apartment the only money found was a few coins on a bedroom dresser.[31] While the evidence is purely circumstantial, one could reasonably infer therefrom that petitioner robbed the victim of whatever money she had on her person or in her apartment upon her return from her grocery trip.

In light of the Court's conclusion that the evidence sufficiently supported a finding that the eight dollars belonged to the victim and that petitioner had therefore indeed robbed her, the Court finds it difficult to conclude that trial counsel acted unreasonably by not moving specifically to strike the evidence of robbery and capital murder. Assuming *arguendo*, however, that the failure to make such a motion was unrea-

sonable, the instant claim of ineffective assistance would still fail. Because the evidence of robbery was sufficient, any motion to strike based on the lack of such evidence would have been futile. Petitioner is thus unable to satisfy the second prong of the *Strickland* test. Accordingly, this claim must be dismissed.

*9. Claim 9(1): Failure to ask for proper jury instructions on the robbery issue.*

Petitioner contends that another aspect of trial counsel's ineffective assistance was his failure to ask for proper jury instructions on the robbery issue. He alleges that the trial court's instructions on the issue of robbery impermissibly shifted the burden to petitioner of proving that he did not commit capital murder, and thereby suggest that trial counsel should have objected to those instructions because of their alleged impropriety.

 Respondents point out that the state habeas court found that the jury was properly instructed on lesser included offenses, *see* Letter Opinion at 4, and contends that such a finding is entitled to a presumption of correctness under Section 2254(d).[32] The Court believes that such a finding is not one of fact but one of law, to which the presumption of correctness does not apply.

 After reviewing the instructions, however, the Court agrees that there wasn't anything improper about them. The trial judge instructed the jury that, in order to return a guilty verdict on the capital murder charges,

The Commonwealth must prove beyond a reasonable doubt each of the following

---

**25.** Trial Trans. at 162–63, 193–94.

**26.** Trial Trans. at 223, 233–34.

**27.** Trial Trans. at 160–61.

**28.** *See* Trial Trans. at 197, 239.

**29.** Trial Trans. at 198.

**30.** Trial Trans. at 202–05.

**31.** Trial Trans. at 205–06.

**32.** Respondents also argue that petitioner is barred by *Wainwright v. Sykes,* 433 U.S. 72, 97

S.Ct. 2497, 53 L.Ed.2d 594 (1977), and the doctrine of procedural bypass during the habeas review, with respect to his claim for relief based on improper jury instructions. Respondents misperceive the nature of petitioner's claim in 9(1), however, his claim is not that he is entitled to the relief sought because of improper jury instructions; rather, he seeks relief because counsel's failure to object to such allegedly improper jury instructions constitutes ineffective assistance of counsel. Respondent's argument is therefore inapposite.

elements to that crime: First, that the defendant killed Wilhelmina Smith. And, second, that the killing was willful, deliberate, and premeditated. And, third, that the killing occurred during the commission of a robbery while the defendant was armed with a deadly weapon.

Trial Trans. at 364. Later in his charge, the trial judge again pointed out that robbery is an element of capital murder, and recited the elements of robbery itself:

If you find the defendant guilty of capital murder or first-degree felony murder, then you must find him not guilty of robbery because robbery is one of the elements of those crimes. If you find the defendant guilty of first-degree murder or not guilty of murder, then you shall consider whether he's guilty of robbery. The Commonwealth must prove beyond a reasonable doubt each of the following elements of robbery: First, that the defendant intended to steal. Second, that United States currency was taken. Third, that the taking was from Wilhelmina Smith or in her presence. Fourth, that the taking was against the will of Wilhelmina Smith. And, fifth, that the taking was accomplished by violence to Wilhelmina Smith.

Trial Trans. at 367–68. The Court discerns nothing improper about any of these instructions. It therefore rejects petitioner's contention—which is unsupported by any authority—that such instructions impermissibly shifted the burden of proof to petitioner on the capital murder charge.

▇▇▇ Petitioner's brief elaborates his contention of ineffective assistance resulting from improper jury instructions on the robbery issue. He argues that the instructions on capital murder should have made clear that, if the victim was murdered in only an attempted robbery other than a robbery, no capital murder can be found. *See Ball v. Commonwealth,* 221 Va. 754, 273 S.E.2d 790, 792 (1981) (murder in attempted robbery does not support capital murder). He contends that such an instruction was necessary in view of the trial judge's instruction that the third element of capital murder is "that the killing occurred *during the commission of* a rob-

bery." Trial Trans. at 364. (emphasis added). He presents no authority whatever for this position, however, and the Court rejects it. The phrase that raises petitioner's concern is *verbatim* from the statute defining the offense of which petitioner was convicted. Va.Code § 18.2–31(d) ("the willful, deliberate and premeditated killing of any person in the commission of robbery while armed with a deadly weapon"). The Court does not believe that the instruction invited jurors to believe that a murder during the course of an attempted robbery would sustain a capital murder conviction. In addition, the trial judge later instructed the jurors that robbery was an element of capital murder, prior to instructing the jurors on the elements of robbery. He also instructed them that "murder during the commission of a robbery occurs where the killing is so closely related to the robbery in time, place, and causal connection as to make it part of the same criminal enterprise." Trial Trans. at 366. These instructions should have reduced any ambiguity as to whether murder in the course of an attempted robbery would sustain a capital murder charge.

Of course, counsel could have offered an instruction along the lines petitioner now contends was required; and the trial judge may have given it. Such an instruction would no doubt have emphasized to the jurors that robbery, not attempted robbery, must be proved for capital murder. But in light of the instructions given, petitioner has failed to establish that trial counsel was unreasonable in not seeking to have the jury instructed otherwise. Petitioner therefore has failed to meet the first prong of the *Strickland* test. He also has not established any prejudice to petitioner as a result of trial counsel's conduct on which he focuses in this claim. Accordingly, this claim must be dismissed.

*10. Claim 9(m): failure to argue adequately the robbery issue with the jury.*

Petitioner contends in a claim separate from 9(i) that another defect in his trial representation was his counsel's failure to argue adequately the robbery issue to the jury. The Court has already addressed the substance of this claim in its disposition of

Claim 9(i), *supra.* For the reasons stated in this discussion, this claim must be dismissed.

*11. Claim 9(n): failure to object to prosecutorial misconduct in closing argument at guilt phase of proceeding.*

■ Petitioner asserts that another instance of his trial counsel's ineffective assistance was his failure to take "proper steps" to "deal with ... prejudice to the petitioner" resulting from the prosecutor's alleged misconduct in his argument at the close of the guilt phase of the proceedings. In that argument, the prosecutor referred to petitioner as a "person who has been convicted three times before of a felony," while referring to petitioner's credibility.[33] Petitioner apparently contends now that he had only two prior felony convictions. He argues that the prosecutor must have known this, in view of the fact that the prosecutor's own file reflected only two convictions and that his evidence and argument at the sentencing stage of the proceedings,—which transpired shortly thereafter on the same day—was based on two prior felony convictions of the petitioner, not on three. He further argues that, under those circumstances, the prosecutor's reference to three felony convictions constituted prosecutorial misconduct, to which his trial counsel responded ineffectively.

Respondents point out initially that petitioner failed to raise this particular instance of ineffective assistance in his petition to appeal the circuit court's denial of his state habeas corpus petition, which petitioner acknowledges. Respondents argue that the doctrine of deliberate bypass therefore precludes petitioner from raising the claim in this proceeding. Thus, it would appear that he is indeed barred from raising it here, as discussed in Part II(B)(1)(a) ("Deliberate Bypass"), *supra.*

Even if deliberate by-pass does not apply, the Court must reject this claim. Petitioner himself testified on cross examination that he had three prior felony convictions in response to the question of how many times he had been convicted of a felony after petitioner's first response to that effect. The prosecutor asked petitioner three times whether three felonies were involved; petitioner continued to indicate that he had three such convictions. In light of the testimonial evidence from petitioner himself, the Court discerns no misconduct in the prosecutor's referring to three felony convictions during his closing argument.

Furthermore, the Court finds nothing unreasonable about trial counsel's handling of this state of affairs by, in essence, ignoring it. Had he attempted to rehabilitate petitioner on redirect examination, petitioner may have persisted in testifying to three prior felony convictions. Also, any further testimony elicited or objections made at the guilt stage, on the issue of the number of petitioner's felony convictions, would have called additional attention to the general fact that petitioner had a record of repeated felonies, and may well have hurt his case more than it would have helped. *See Adams v. Wainwright,* 709 F.2d 1443, 1446 (11th Cir.1983). Petitioner has failed to meet both prongs of the *Strickland* test; accordingly, this claim must be dismissed.

*12. Claim 9(0): failure to prepare adequately for sentencing.*

Petitioner complains that his counsel was also ineffective in his preparation for and presentation of evidence at the sentencing phase of the proceedings. He alleges that no evidence was presented in mitigation of the offense or of the punishment despite its availability, and that trial counsel made no attempt to investigate the existence of such evidence.

■ At the plenary hearing of his state habeas petition, one of the omissions of trial counsel that petitioner explored was counsel's failure to adduce any psychiatric testimony concerning petitioner's mental condition.[34] Trial counsel explained, however, that he believed the use of such testimony at sentencing would work to petitioner's disadvantage.[35] The Court notes that

---

**33.** Trial Trans. at 284.

**34.** *See* Habeas Trans. at 143–45.

**35.** Habeas Trans. at 144–45.

he also testified that petitioner was opposed to being subjected to a psychiatric evaluation, and furthermore that petitioner did not appear to have any mental problems.[36] The Court concludes that trial counsel's decision not to investigate further petitioner's mental condition was reasonable. And the record does not reflect any prejudice in this regard whatever to petitioner. A second omission petitioner explored at the state habeas hearing was trial counsel's failure both to call as witnesses family members who could have presented mitigating evidences at the sentencing and to interview them. This omission is, indeed, more troubling.

 It is undisputed that petitioner did not want his mother to become involved in the proceeding. Furthermore, her testimony at the state habeas hearing, during cross examination, revealed that while petitioner was in his early teens, he became involved in both drugs and crime. This largely undermined any positive light her testimony may have thrown on petitioner's character. The Court concludes that there was nothing unreasonable—and nothing prejudicial—about trial counsel's failure to call petitioner's mother as a witness in the sentencing phase.

With regard to the adequacy of trial counsel's investigation of potential character witnesses, however, the Court is more doubtful. Respondents do not dispute that trial counsel failed to interview any of petitioner's relatives or acquaintances of whom he was aware. The state habeas proceeding reflects that trial counsel's and petitioner's testimony on the circumstances surrounding this fact vary considerably. Trial counsel indicates that he advised petitioner of the significance of the sentencing proceeding,[37] but that petitioner expressed a desire that such people not be involved.[38] Petitioner, on the other hand, testified that the only person he did not want involved was his mother; that he did not instruct trial counsel not to talk with his mother

about his background, even though he did not want her present at the proceedings; and that trial counsel never asked him about other relatives testifying on his behalf.[39] Depending on which version is true, the Court could reach different conclusions as to whether trial counsel's investigation and preparation for the sentencing proceeding was reasonable. The state habeas judge did find that the testimony of trial counsel was credible and that the Court accepted such testimony notwithstanding any conflicts with petitioner's testimony. Letter Opinion at 1. Even if trial counsel's testimony is accepted in its entirety, however, the Court is not satisfied that his conduct was reasonable.

Furthermore, trial counsel's omissions may have sufficiently prejudiced petitioner to meet the "reasonable probability of a different outcome" standard that *Strickland* mandates. Petitioner's brother, for example, testified that he and petitioner lived and worked together for some time after petitioner had moved back to Petersburg from New Jersey; that petitioner had been a good worker; that petitioner and he had been active at a community center, playing sports together and teaching children; that trial counsel never contacted him in any manner; and that, had he been asked to testify at the sentencing proceedings, he would have been willing and able to do so.[40] The Court believes that such testimony may well have affected the outcome, especially in light of the minimal testimony on petitioner's behalf that was actually presented at the sentencing phase which consisted entirely of petitioner's own testimony. It was of dubious credibility, especially after the jury had just chosen to disbelieve his alibi story. It was also of little help, consisting of some virtually incoherent remarks about trying to grow up; about Bible study during his recent incarceration; and explanations of the circum-

---

**36.** Habeas Trans. at 143–44.

**37.** Habeas Trans. at 148.

**38.** Habeas Trans. at 121, 147.

**39.** Habeas Trans. at 89–90.

**40.** Habeas Trans. at 54–57.

stances surrounding his two prior felony convictions brought out by the prosecutor.

■■■ In regard to any possible prejudice, respondents point out the state habeas court's conclusion that:

> The possible benefit or advantage of the testimony of either petitioner's mother or brother would have been substantially offset by admissions that each would have had to make when subjected to cross-examination. It has not been shown that counsel's failure to interview these family members was prejudicial to petitioner.

Letter Opinion at 5. He argues that, under 28 U.S.C. § 2254(d), this finding is entitled to a presumption of correctness.[41] This appears to be a finding on prejudice, however, which is not entitled to the presumption. *See Strickland, supra,* 466 U.S. at ——, 104 S.Ct. at 2069 ("both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact").

Assuming that the finding is indeed an historical fact to which the presumption of correctness applies, however, the Court believes that it is not fairly supported by the record. Therefore, pursuant to 28 U.S.C. § 2254(d)(8), the presumption is overcome. At the state habeas hearing, petitioner's brother was cross-examined without any detriment whatever to the positive testimony he had made on petitioner's behalf. The cross-examination merely brought out that petitioner had been convicted of an assault on another young man during the time that petitioner had been living with his brother.[42] This was the same assault underlying one of petitioner's two felony convictions that the Commonwealth had introduced at the sentencing phase anyway. And it in no way undermines the credibility of petitioner's brother as a witness. In view of these facts, the record does not fairly support the conclusion that cross-examination "sub-

stantially offset" the "benefit or advantage to petitioner" of his brother's testimony.

■■■ In view of these conclusions, a hearing is appropriate for further consideration of this claim.

*13. Claim 9(p): failure to preserve objections to improper sentencing argument.*

■■■ Petitioner further alleges that trial counsel rendered ineffective assistance by failing to "preserve valid objections" to allegedly improper argument by the prosecutor at the sentencing stage. As respondents point out—and petitioner acknowledges—petitioner failed to raise this particular claim in his petition for appeal of the denial of his state habeas petition. Respondents argue that this claim is therefore barred by the doctrine of deliberate bypass, which appears to be true, as discussed in Part II(B)(1)(a) ("Deliberate Bypass"), *supra.*

Even if the deliberate bypass doctrine did not apply, however, petitioner would not prevail on this claim. Trial counsel did object to two of the prosecutor's arguments at sentencing. He then questioned, on appeal,' the propriety of those arguments. *See Clanton,* 286 S.E.2d at 178–79. The Virginia Supreme Court held that both of the arguments objected to were proper. The Court discerns no unreasonable conduct, and certainly none of the requisite prejudice, in the way trial counsel objected to these arguments. Petitioner has not alluded in his brief to any other arguments to which he believes trial counsel failed properly to object. Thus, with respect to this claim, the Court finds that petitioner has failed to establish both the unreasonable conduct and the prejudice required under *Strickland* to establish ineffective assistance of counsel. Accordingly, the claim must be dismissed.

---

**41.** Here, as elsewhere in their briefs, respondents do not specifically refer to Section 2254(d); rather, they refer to *Sumner v. Mata,* which the Court construes as being respondents' short-hand way of arguing that the state court

has made a finding of fact entitled to a presumption of correctness under 28 U.S.C. § 2254(d).

**42.** Habeas Trans. at 58.

*14. Claim 9(g): failure to preserve on record any argument concerning jury instructions.*

█ Another instance of ineffective assistance, petitioner alleges, is counsel's "failure to preserve on the record any argument concerning jury instructions." As with Claims 9(a), (n), and (p), respondents point out—and petitioner concedes—that petitioner failed to raise this argument in his petition for appeal of the denial of his state habeas petition. Respondents argue that this claim is therefore barred by the doctrine of deliberate bypass, a contention that appears to be well taken, as discussed *supra*, in Part II(B)(1)(a) ("Deliberate Bypass"). Were deliberate bypass not a bar to this claim, however, it would nevertheless fail. The Court has already addressed, in connection with Claim 9(1) *supra*, petitioner's contention that trial counsel was ineffective for not seeking different jury instructions. The Court concluded that the jury instructions at issue were not improper. Accordingly, the Court concludes that trial counsel was not unreasonable in not objecting to those instructions on the record. Petitioner has not alluded to any other instructions that he believes were improper. Further, in light of the fact that none of the instructions appear to have been erroneous, a petitioner has not established any prejudice whatever due to counsel's failure to preserve objections. Petitioner has thus failed to meet both prongs of the *Strickland* test; this claim must therefore be dismissed.

*15. Claim 11: failure to spend sufficient time preparing for trial.*

Petitioner alleges in Claim 11 of his petition that counsel was ineffective by failing to spend sufficient time preparing for trial. He includes, in this failure, trial counsel's conduct with respect to seeking out and interviewing witnesses and gathering evidence for sentencing at trial. The Court has already disposed of the latter allega-

tions in its discussion of Claim 9(o), however; they need not be addressed further here. Petitioner also alleges that his trial counsel spent inadequate time reviewing both the sentencing and guilt phases of the proceedings with him.

█ The state habeas judge concluded that "counsel spent sufficient time and effort preparing for trial, including time spent with Petitioner." Letter Opinion at 6. This appears to be a finding of reasonableness, which is not entitled to a presumption of correctness. *See Strickland, supra,* 466 U.S. at ——, 104 S.Ct. at 2069. The Court has therefore reviewed the state habeas transcript. Based upon its review, the Court agrees with the state habeas judge. Trial counsel had access to and reviewed the files of both the Commonwealth's attorney and petitioner's first court-appointed counsel. He met with petitioner on at least five occasions prior to trial on March 13, 1985, from the time of his appointment in late December of 1980, for meetings lasting between one and one-and-one-half hours.[43] Trial counsel discussed with petitioner the advisability of filing motions for change of venue and for psychiatric evaluation.[44] After a case investigator employed by his firm had interviewed witnesses and prepared written summaries, trial counsel personally interviewed those witnesses in the case whose testimony seemed to require it.[45] He also examined prior to trial the exhibits that the prosecutor intended to offer.[46] None of this preparation appears to be inadequate on its face. Further, petitioner has not called the Court's attention to anything in particular that he contends represents a lack of preparation. Nor has he even alluded to any particular prejudice resulting from the alleged shortcomings. Petitioner has therefore failed to meet both prongs of the *Strickland* test. Accordingly, the Court must dismiss this claim.

**43.** Habeas Trans. at 124–128.

**44.** Habeas Trans. at 128.

**45.** Habeas Trans. at 134–38.

**46.** Habeas Trans. at 138.

*16. Claim 12: failure to object to trial Court's examination of prospective jurors on their death penalty views.*

 Petitioner's final claim of ineffective assistance is based on his trial counsel's not objecting to the trial court's examination of prospective jurors on their views of the death penalty. He alleges that such an examination by the trial judge resulted in a jury that was biased against petitioner at both the guilt and sentencing stages of the proceedings, depriving petitioner of his "right to a fair and impartial jury and to due process of law, in violation of the Sixth, Eighth and Fourteenth Amendments."

As respondents point out, this claim was not raised in the state habeas proceedings at all. Petitioner's assertion to the contrary is plainly incorrect. Respondents contend that petitioner is therefore barred from raising the claim here, which appears to be correct.[47]

Even if this claim were not barred, however, petitioner has submitted here no manner of argument or authority to support it. And in his state habeas petition,[48] he merely asserted—in conclusory fashion—that "scientific evidence shows" that the process of "death-qualifying" a jury results in a jury that is prosecution-prone both at the guilt stage and at the sentencing stage, and that petitioner was thereby deprived of his constitutional rights to a trial by an impartial jury and to due process of law. He has therefore failed to establish both that trial counsel was unreasonable by not making the argument he now suggests, and that the failure to make such an argument led to any prejudice whatever. Accordingly, the claim must be dismissed.

*III. Insufficient evidence of robbery.*

 Petitioner's final contention to be addressed is that the Commonwealth's evidence was insufficient to establish beyond a reasonable doubt that a robbery had been committed. Therefore, he argues, his conviction of capital murder during the course of a robbery deprived him of due process of law.

Respondents correctly point out that petitioner failed to pursue this claim in his petition for appeal of the denial of his state habeas petition. They argue that this constitutes a deliberate bypass of state remedies, and that he is therefore barred from raising this claim here. This appears to be true.[49] Even if the claim were not procedurally barred, however, the Court has already carefully considered the sufficiency of the evidence, of robbery,[50] and has concluded that it was indeed sufficient, in the contest of determining whether trial counsel was ineffective for not moving to strike the evidence of capital murder and robbery.

The standard for determining the sufficiency of the evidence in a federal habeas corpus proceeding is whether, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). The Court has no doubt that the evidence of robbery meets that standard. It must therefore dismiss this claim.

CONCLUSION

Having reviewed the record in its entirety, the Court concludes that all claims shall be dismissed with the exception of the claims asserted in 9(d) and 9(*o*). The Court

---

**47.** *See* text, *supra,* Part II (B)(1)(a) (bar due to failure to raise in appeal of denial of state habeas petition); see Part II (B)(4) (discussion of procedural bar due to Va.Code § 8.01–654(B)(2), based on failure to assert claim in initial state habeas petition).

**48.** Petitioner asserted in his state petition that the death-qualification of the jury, in itself, was grounds for habeas relief; here, by contrast, he asserts that trial counsel's failure to object to the allegedly unconstitutional death-qualification

process is grounds for habeas relief. Thus, the claim raised in the habeas petition was not the same as that before the Court. Nevertheless, the Court looked to the claim in the state habeas proceeding to determine what support petitioner had mustered for his contention that the death-qualification process violated his constitutional rights.

**49.** *See* text, *supra,* Part II(B)(1)(a).

**50.** *See* text, *supra,* Part II(B)(8).

shall order a hearing on those remaining claims.

An appropriate order shall issue.